Breitel, J.
In an action for breach of a financing contract, plaintiff construction company appeals from an order granting summary judgment to defendant lender. The question is whether a triable issue is raised by general averments, with *288 out more, that express cancellation of one agreement by later agreements was not intended to discharge prior breaches of the first agreement.
The order should be affirmed. It is true, of course, that whether a later agreement discharges matured obligations under a prior agreement is a question of intention, as Special Term concluded. Nevertheless whether a submission on the issue of intention raises a triable issue of fact, is a separable question, the outcome- of which will determine whether summary judgment will lie. Although parol evidence would have been admissible to show that the later agreements were not intended to discharge prior breaches of the first agreement, no such evidence, aside from conclusory statements, was submitted in the opposition papers. The documents submitted by defendant are, therefore, properly interpreted by the court on the motion for summary judgment to establish an intention of the parties to discharge any prior breach.
On September 6, 1967, defendant County Federal Savings and Loan Association agreed in writing to lend Hallad Construction Company $2,160,000 for a period of 18 months as a building loan, and, at the end of that period, to convert the building loan into a permanent mortgage of $2,400,000. The commitment was extended by agreement on December 8, 1967. On March 13, 1968, in conformity with these agreements, plaintiff Hallad and defendant lender executed a building loan agreement. The lender was thus obliged to make percentage advances at different stages of completion of the planned apartment building in the City of Glen Cove, New York.
At the closing of the loan agreements. Hallad exhibited a building permit which had been previously revoked by the city, without advising the lender of the revocation. The lender advanced $324,000. Hallad had, indeed, before the closing, begun an action to declare the permit valid. That declaratory action was not finally determined until July 30, 1969. On that ■ date the lender advanced an additional $543,000. If the building was not then complete, the obligation to advance further funds terminated, by the terms of the- original agreement, on July 31, 1969, the day after the additional advance.
Hallad contends that the lender breached its agreement by refusing to make scheduled progress payments before July 30, *289 1969. Previously, on February 24, 1969, a progress payment had been requested and denied, because the City of Glen Cove was appealing from a judgment, after trial, sustaining the permit. Apparently, some construction had continued while the validity of1 the permit was being litigated.
On October 9, 1969, the lender assigned the building loan agreement to Sackman-Gilliland Corporation with Hallad’s written consent. Hallad acknowledged in favor of the assignee that there were “no defenses or offsets to [the] mortgage nor to the note which it secures.” It now argues that this acknowledgment or estoppel certificate only protected the assignee of the mortgage and note, and did not discharge the original lender from prior breaches of its obligation to extend financing.
The earlier loan agreements having expired, a new written agreement was executed on October 30, 1969 by Hallad, the lender, and the lender’s assignee, Sackman-Gilliland. The later agreement changed the terms of the earlier agreement by raising the interest rate substantially. A clause provided: “It is agreed that this commitment is non-transferable and will be effective only with Hallad Construction Corp and its present principals and its acceptance shall constitute a revocation and •cancellation of the prior agreement between the parties hereto dated September 6, 1967 and revised December 8, 1967.” No breach of this last agreement is asserted. Instead, Hallad contends that, while canceling the earlier agreement, it did not discharge the lender for any prior breach. The lender, on the other hand, contends that it was discharged, even for an alleged completed breach, if there were one.
Sometime after the later agreement was executed, Hallad sold the partially-completed structure to Solork Corporation. On February 25, 1970, defendant lender issued a further commitment to Solork upon substantially the same terms as the October 30, 1969 agreement with Hallad. This new commitment, consented to by plaintiff Hallad, contained a clause providing: “ It is agreed that this commitment is non-transferable and will be effective only with Solork Corporation * * *, and its acceptance shall constitute a revocation and cancellation of any prior commitments issued by our Association to Hallad Construction Corp. covering the same premises.” Plaintiff *290 Hallad contends that this provision again says nothing about a discharge for a prior breach. Defendant lender counters that this last agreement reinforces the later October 30 agreement relieving it of any obligation under the earliest agreement.
In support of its motion for summary judgment, the lender avers the facts as stated above. In opposition, Hallad avers that ‘ ‘ no where in these motion papers was any release given by plaintiff to the defendant nor can any of these closing documents be interpreted as granting a release. While the prior commitment was revoked, the plaintiff’s claim for damages * * * was never released.” It also avers that no general release was ever demanded or given.
Special Term stated that ‘ ‘ whether cancellation of a contract is also a discharge of a prior breach is a matter of intention, to be ascertained from all the circumstances ”, and held that there was, therefore, a triable issue of fact. In reversing, the Appellate Division majority held that the conduct of the parties, as evidenced by the later assignment and subsequent agreements, manifested an intention by the parties to supersede the original commitments and to discharge all obligations arising under them.
To defeat summary judgment the opponent must present evidentiary facts sufficient to raise a triable issue of fact, and averments merely stating conclusions, of fact or of law, are insufficient (e.g., Ehrlich v. American Moninger Greenhouse, 26 N Y 2d 255, 259; P. D. J. Corp. v. Bansh Props., 29 A D 2d 927, affd. 23 N Y 2d 971; 4 Weinstein-Korn-Miller, N. Y. Civ. Prac., ¶ 3212.05c, esp. p. 32-142.36; 6 Carmody-Wait, N. Y. Prac. [2d ed.], § 39:29). Thus, it is not enough for the opponent to show that an agreement is ambiguous permitting the introduction of parol evidence. The opponent must also disclose in evidentiary form the particular parol evidence, if any, on which it relies. (Ehrlich v. American Moninger Greenhouse, 26 N Y 2d 255, supra; Hertz Commercial Leasing Corp. v. Transportation Credit Clearing House, 64 Misc 2d 910 [App. Term], revg. 59 Misc 2d 226.) Otherwise, there are only documents to interpret, and the court may resolve ambiguities appearing in the documents on a motion for summary judgment (see Rentways, Inc. v. O’Neill Milk & Cream Co., 308 N. Y. 342, 349; Hertz *291 Commercial Leasing Corp. v. Transportation Credit Clearing House, supra; 4 Williston, Contracts [3d ed.], § 601; 10 N. Y. Jur., Contracts, § 190).
The test on summary judgment is whether the issue is one of law or of fact (CPLR 3212, subd. [b]). The courts have .declared on countless occasions that it is the responsibility of the court to interpret written instruments (4 Williston, Contracts, § 601, supra). The problem of analysis of the instrument is to determine “ what is the intention of the parties as derived from the language employed” (id., § 600, at p. 280). Thus, where a question of intention is determinable by written agreements, the question is one of law, appropriately decided by an appellate court (see Rentways, Inc., v. O’Neill Milk & Cream Co., 308 N. Y. 342, supra), or on a motion for summary judgment. Only where the intent must be determined by disputed evidence or inferences outside the written words of the instrument is a question of fact presented (O’Neil Supply Co. v. Petroleum Heat & Power Co., 280 N. Y. 50, 56). (Restatement, 2d, Contracts, T. D. No. 5, § 238, esp. Comment d.)
In the Ehrlich case (26 N Y 2d 255, supra) plaintiff moved for summary judgment on a note. Defendant opposed the motion on the ground that there had been no consideration for the note, notwithstanding the recital of “ value received” on the note. The court held that the recital was only an inconclusive admission of fact, and that contrary parol evidence was admissible to show lack of consideration (26 N Y 2d, at p. 258, supra). The court nevertheless sustained summary judgment holding the conclusory statements, that the note was actually an investment and that it had been denominated a loan solely for tax reasons, were insufficient to raise a triable issue (26 N Y 2d, at p. 259, supra).
In the Hertz case (59 Misc 2d 226, revd. 64 Misc 2d 910, supra) plaintiff Hertz leased equipment to the defendant under an agreement containing a disclaimer of warranties clause. The defendant admitted not having paid the rent due, but asserted the defense of breach of express and implied warranties of merchantability. The disclaimer clause did not appear to have been bargained for, nor was it 1 ‘ conspicuous ” under the provision in the Uniform Commercial Code, and, for these reasons, the agreement was held not to preclude warranties. The Civil *292 Court denied -summary judgment on the ground that express warranties might have been made or warranties implied during the preliminary negotiations, thus raising a triable' issue. The Appellate Term reversed and granted sumary judgment stating that the moving papers “ based on documentary evidence were opposed by conclusory statements devoid of evidentiary facts ” (64 Misc., at p. 910, supra). Thus, it was not sufficient to show that the agreement was ambiguous or uncertain and to aver conclusorily that certain warranties had been made; it was also necessary, to defeat summary judgment, to present, in evidentiary form, the parol evidence that warranties were in fact made and intended to be made and be binding. Absent parol evidence, the appellate court directed summary judgment since there was nothing dehors the instrument to meet or controvert the issues of law and fact tendered.
In the instant ease, no parol evidence was offered. Nothing was presented to indicate that anything more than the documents and the circumstances of their execution could be introduced at a trial. Although in a proper case the circumstances of execution of documents may raise issues of fact, this is not such a case (4 Williston, Contracts, § 629, supra). The sequence and dates of execution appeared on the documents and were not disputed. There is no evidence that when the subsequent agreements were negotiated or executed that any breach of prior agreements was raised (see, for relevance of failure to raise, Breger v. Hampshire Country Club, 30 A D 2d 526, affd. 23 N Y 2d 958). The reasons for rescinding the earlier agreements alleged to have been breached were undisputed and are of minimum assistance in determining whether or not the lender was discharged for any prior breach. Indeed, the succession of substituted agreements and parties, and the evident common interest in working -opt a facile accommodation to the financial needs of the construction project, if anything, supports the inference that all rights derived from the earlier agreements were released.
As stated by the courts below, whether the agreements rescinding the original loan commitments also effected a discharge depends on the intention of the parties, deduced from the documents and the circumstances of their execution (e.g., Bogart Mfg. Corp. v. Franklin Fibre Lamitex Corp., 16 A D 2d 652; *293 Beck & Sons v. Danaher, 93 Misc. 537, 539). Ordinarily, where an agreement alleged to have been breached has been rescinded, the claim is determined by reference to the rescission agreement, “ ‘ and in general no such claim can be made unless expressly or impliedly reserved upon the rescission ’ ” (Eames Vacuum Brake Co. v. Prosser, 157 N. Y. 289, 295; McCreery v. Day, 119 N. Y. 1, 5; see, also, Mayor of City of New York v. New York Refrig. Constr. Co., 146 N. Y. 210, 214-215; Beck & Sons v. Danaher, 93 Misc. 537, supra). Moreover, the McCreery ease (supra) expressly noted that a new agreement executed before or after a breach, at least if performed, operates as an accord and satisfaction of a prior covenant (119 N. Y., at p. 9).
In summary, whether a substituted agreement, otherwise uncertain as to its purpose, effects a discharge of a pre-existing cause of action for breach of the prior agreement is, indeed, a question of intention. Such question will rise to be a triable issue of fact if relevant, disputed, extrinsic evidence is offered or present. If there is no disputed extrinsic evidence of intention, then a question of law only is present, determinable from the available writings and undisputed circumstances of execution by the court alone upon a trial or on summary judgment, as is always the case in the interpretation of written agreements.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Fuld and Judges Burke, Jasen, Gabrielli, Jones and Wachtler concur.
Order affirmed.