55 N.Y.2d 550 (1982)
Albert L. Sutton, as Executor of Leon A. Sutton, Deceased, Respondent,
v.
East River Savings Bank, Appellant, et al., Defendants.
Court of Appeals of the State of New York.
Argued March 25, 1982.
Decided May 11, 1982.
Edward F. Gentner, Jr., for appellant.
Philip A. Mittleman and Benedict Ginsberg for respondent.
Chief Judge COOKE and Judges GABRIELLI and JONES concur with Judge FUCHSBERG; Judge MEYER dissents and votes to reverse in a separate opinion in which Judges JASEN and WACHTLER concur.
*552 FUCHSBERG, J.
In an action to recover a real estate brokerage commission, defendant East River Savings Bank appeals from an order of the Appellate Division, which, reversing Special Term on the law, granted summary judgment in favor of the plaintiff, executor of the broker's estate, on his first cause of action.[*] This count was grounded on a written agreement between the broker and the bank. The bank's contention is that it tendered extrinsic evidentiary facts sufficient to defeat the motion for summary judgment and that, even if it had not, the Appellate Division's construction of the agreement was erroneous. We now uphold the Appellate Division's determination.
The agreement, in letter form, related to a New York City commercial building on which the bank was in the process of foreclosing a defaulted first mortgage; at the time, no judgment of foreclosure had yet been entered. The letter-agreement, prepared by the broker but signed by both the bank and himself, read as follows:
"Re: 22 E. 42nd St. NYC
"In accordance with our understanding and in pursuance with your request at the meeting in your office on January 4th with Mr. Frank O'Neill of McDonald Corporation, I am sending you this letter in duplicate with regard to my commission as the broker for the sale of the above captioned property.
"My commission for the sale of the property or for the assignment of your mortgage to McDonald Corporation shall be $10,000.00 to be due at the time of title closing if the deal entails the sale of the property or at the time of assignment of your mortgage if the deal entails the sale of same.

*553 "In the event, for any reason, McDonald Corporation shall elect to act through a nominee or an assignee, then it is understood that I shall be entitled to the commission above stated".
Thereafter, McDonald, the fast food chain, by its nominee, Franchise Realty Interstate Corporation, took title to the property. It did so after bidding it in at the foreclosure sale. The price, as revealed by the referee's report, was sufficient to permit full satisfaction of defendant's mortgage. This suit ensued when the bank balked at having to pay the $10,000 commission.
In defending the action, the bank pressed the position that the agreement manifests an intent that the broker be deemed to have earned the stated commission only if the bank "obtain[ed] title to the property by means of a foreclosure sale, with subsequent conveyance of the property to McDonald's or its nominee"; that, since the acquisition proceeded along a different path, a "condition precedent ha[d] remained unfulfilled"; and that, as a consequence, nothing was due the broker. Moreover, when put to the test on plaintiff's motion for summary judgment, the bank submitted two affidavits by which it professed to proffer extrinsic evidence to confirm its contentions.
However, neither affidavit filled that bill. One, by a counsel for the bank, since he laid no claim to any first-hand knowledge of the facts, was not competent for this purpose (see David Graubart, Inc. v Bank Leumi Trust Co. of N. Y., 48 N.Y.2d 554, 559). The other, by a bank officer who had not signed the agreement, aside from essaying a vigorous argument as to how the bank believed the agreement should be interpreted, consisted of a compendium of conclusory, self-serving and even speculative assertions, such as comments on what "the parties had in mind in executing the letter" and what the broker should have "understood". Though the officer also offered information that he had "dealt personally with plaintiff's decedent", neither the nature nor precise content of these dealings was specified. In short, neither affidavit offered either a tender of evidentiary proof in admissible form or a demonstration of an acceptable excuse for a failure to meet the "strict requirement" for such a tender in opposition to a *554 motion for summary judgment (Friends of Animals v Associated Fur Mfrs., 46 N.Y.2d 1065, 1067-1068; cf. Rotuba Extruders v Ceppos, 46 N.Y.2d 223, 231).
Of course, had the tender been of requisite quality, the courts below would have had to determine whether the agreement was so beset by ambiguity that the determination of the intent of the parties required a trial at which a jury or other fact finder could clear up the ambiguity by passing on the credibility of the extrinsic evidence and whatever inferences reasonably could be drawn therefrom (Hartford Acc. & Ind. Co. v Wesolowski, 33 N.Y.2d 169, 172). For, the threshold decision on whether a writing is ambiguous is the exclusive province of the court (Patterson, Interpretation and Construction of Contracts, 64 Col L Rev 833, 839).
Thus, absent such a tender, all that was available to the court in the present case was the writing itself. Ambiguous or not, the document then became one for construction by the Judge alone, since if "equivocality must be resolved wholly without reference to extrinsic evidence" the issue must be so determined (Hartford Acc. & Ind. Co. v Wesolowski, supra, p 172; cf. Mallad Constr. Corp. v County Fed. Sav. & Loan Assn., 32 N.Y.2d 285, 291). It follows that the concern that there might be some ambiguity, expressed by the sole dissenting Justice at the Appellate Division, was beside the point.
In this legal posture, whether the obligation of the Judge at nisi prius, in construing the written agreement, may be said, in an exact sense, to have been to pass on it as a matter of law, or whether it implicitly called upon him to treat with integral factual elements as well, the rule which leaves the matter in the hands of the Judge is supported by experientially indorsed considerations of policy and practicality (see Thayer, A Preliminary Treatise on Evidence at the Common Law, ch 5, Law and Fact in Jury Trials, pp 202-207). Rooted in ancient history (see Essays in Anglo-Saxon Law, p 230), this practice continues to be justified, inter alia, by "the judge's superior equipment  his education and legal experience  to interpret written instruments and to give them reliability" (Patterson, Interpretation and Construction of Contracts, 64 Col L Rev 833, 837).
*555 Worthy of note too is that, by cataloguing this procedure "[a]s a determination of law, the trial judge's interpretation of the meaning of a written contract is not as conclusive upon an appellate court as his `findings of fact' would be and hence may be set aside as `an error' of law". (Patterson, ibid.)
Now exercising this right of review, we remember that, in searching for the probable intent of the parties, lest form swallow substance, our goal must be to accord the words of the contract their "fair and reasonable meaning" (Heller v Pope, 250 N.Y. 132, 135). Put another way, "the aim is a practical interpretation of the expressions of the parties to the end that there be a `realization of [their] reasonable expectations'" (see Brown Bros. Elec. Contrs. v Beam Constr. Co., 41 N.Y.2d 397, 400, quoting 1 Corbin, Contracts, § 1; see, also, 4 Williston, Contracts [3d ed], § 600, pp 284-285). Concordantly, as previously indicated, not merely literal language, but whatever may be reasonably implied therefrom must be taken into account (10 NY Jur, Contracts, § 191, p 96; Matter of People [Bond & Mtge. Guar. Co.], 267 N.Y. 419, 425). As we recently declared, unless there are reservations to the contrary, embraced in the interpretative result should be "`any promises which a reasonable person in the position of the promisee would be justified in understanding were included'" (Rowe v Great Atlantic & Pacific Tea Co., 46 N.Y.2d 62, 69, quoting from 5 Williston, Contracts [rev ed, 1937], § 1293, the substance of which is now in 4 Williston, Contracts [3d ed], § 610B).
These guidelines in mind, examination of the agreement as a whole almost unavoidably impresses one with the idea that its broad concern was to effect a satisfactory liquidation of the bank's interest in the property rather than with the design of the transaction by which this would be achieved. That an assignment of the mortgage itself was an expressed prospect also reinforces the inference that the goal of the bank, as a lender, was, as far as possible, to recoup its loan rather than become the property's owner of record. And it seems to us that, reasonably and realistically read, the bank's continuing commitment to the broker notwithstanding the possible change in the former's status from that of foreclosing mortgagee to that of owner *556 would include the intermediate stages through which the process of making such a transition would normally take the parties. Surely, it demands no divining discernment to understand that the foreclosure sale was such an event. Accordingly, we agree with the Appellate Division's conclusion that "just such a purchase as occurred is one of the alternatives which reasonably must have been contemplated by the agreement" (83 AD2d 801).
All this is not to say that another construction is beyond the realm of rationality. For instance, the bank focusing on the agreement's word "deal", urges that, since the "deal" by which McDonald's nominee acquired title was not one to which it, literally or formally, was a party, the "deal" envisaged never materialized. In context, however, as we construe the agreement, so restricted an application of the term "deal" does not coincide with what the parties must have intended. Rather, it appears much more consistent with the general purport of the agreement to take it to be a way of fixing the point in time when decedent will have earned his commission, i.e., "at the time of title closing if the deal entails the sale of the property or at the time of assignment of your mortgage if the deal entails the sale of same" (emphasis added), and not as a limiting definition on the events that could precipitate it. Indeed, if ambiguity can be said to lurk in the placement of the word, in our opinion deference would be due to the confluence of the principal purposes of the parties to the agreement, here the bank's desire to collect the debt and that of the broker to be compensated for successful efforts in this direction (4 Williston, Contracts [3d ed], § 619; 3 Corbin, Contracts, § 554; Restatement, Contracts 2d, § 202, Comment c).
For all these reasons, the order from which this appeal is taken should be affirmed, with costs.
MEYER, J. (dissenting).
What the majority overlooks is that any insufficiency in the bank's papers in opposition to plaintiff's motion for summary judgment is irrelevant, for until plaintiff presented evidentiary facts establishing prima facie his cause of action, the bank was under no obligation to demonstrate that there was a triable issue of fact (cf. Indig v Finkelstein, 23 N.Y.2d 728; Seymour v St. Luke's Hosp., 28 App Div 119, 123, app dsmd 159 N.Y. 524; 4 *557 Weinstein-Korn-Miller, NY Civ Prac, par 3212.12). Because plaintiff's papers are devoid of any such proof, the order of the Appellate Division should be reversed and the order of Special Term denying summary judgment to plaintiff on the first cause of action should be reinstated.
Plaintiff is the executor of his father's estate. The first cause of action alleges that decedent, a real estate broker, and defendant bank entered into an agreement dated January 5, 1977, concerning the sale of a property known as 22 East 42nd Street, New York, New York, to the McDonald Corporation or its nominee, the operative portion of which read: "My commission for the sale of the property or for the assignment of your mortgage to McDonald Corporation shall be $10,000.00 to be due at the time of title closing if the deal entails the sale of the property or at the time of assignment of your mortgage if the deal entails the sale of same", that the property was thereafter sold to McDonald's nominee, that decedent duly performed and that there was consequently due plaintiff the sum of $10,000.
The executor's affidavit in support of the motion for summary judgment on that cause of action is not stated to be on personal knowledge. It attaches as exhibits the letter agreement quoted above, states that McDonald's nominee purchased the property at a foreclosure sale on October 26, 1977, attaches a copy of the referee's report of sale (which shows that upon foreclosure of the bank's mortgage the property was sold by the referee to McDonald's nominee and that the referee on November 29, 1977 executed a deed "of the said mortgaged premises so sold by me as Referee hereunder" [emphasis supplied]), and expressly eschews any statement "as to the reasons why the sale was accomplished by way of foreclosure as opposed to an outright purchase and sale".
It is, of course, plaintiff's burden to prove performance of the contract alleged. Plaintiff offers no explanation of what decedent did by way of performance other than as the January 5, 1977 letter prepared by decedent refers to a meeting that day with a McDonald's representative in the bank's offices, nor why the letter, which carefully referred to a sale by the bank of the mortgage, did not also speak to the possibility of the bank "selling" through the device of *558 allowing the property to be sold in foreclosure. If plaintiff can prove that the latter was a bad faith device to avoid payment of a commission, he will be entitled to recover on his third cause of action, but that is not before us. The agreement before us, however, cannot be construed as an agreement by the bank to pay a commission for the sale of the property in foreclosure, for that is not a sale by the bank and the bank did not agree to pay a commission for a sale no matter by whom (other than the bank) the sale was made.
The Appellate Division awarded plaintiff summary judgment on the theory that the bank had failed to come forward with evidentiary proof establishing a triable issue of fact. But bearing in mind that it is plaintiff's obligation first to establish a prima facie case, that the agreement was prepared by decedent on his letterhead, that almost 10 months elapsed after its date before the sale was made, that there is no evidence concerning what decedent did in the interim or why the sale was in the foreclosure proceeding and by a court-appointed official rather than the bank, plaintiff's moving papers failed to establish performance sufficiently to require response by the bank.
The interpretation of a writing such as is here involved is, absent extrinsic evidence, normally for the court (Hartford Acc. & Ind. Co. v Wesolowski, 33 N.Y.2d 169, 172). On the present papers, therefore, defendant bank could properly be awarded summary judgment. The bank made no cross motion for summary judgment, however, and plaintiff may be able after discovery, which so far as the record reveals has not yet taken place, to supply evidentiary materials establishing either that a sale in foreclosure was within the intent of the parties or that the sale as negotiated between McDonald's nominee and the bank, though in form a sale by the referee, was in fact a sale by the bank. It was, however, error on the papers before the court to grant plaintiff summary judgment on the first cause of action, for plaintiff's papers are simply insufficient to call into play the interpretative function of the court. If authority for that proposition of law is required it exists in Barrett v Jacobs (255 N.Y. 520, 521) where, as the record reveals, the issue was whether a "transfer of leasehold" had occurred so *559 as to entitle plaintiff broker to a commission when the leasehold owner subleased to the proposed transferee in order to give him additional time to obtain financing and we held in a Per Curiam that "it is not clear that the respondents have earned their commissions under their contract of employment" and reversed an order of the Appellate Division granting summary judgment to the plaintiff broker. That case is on all fours with the present case and should be followed. Plaintiff should be put to his proof.
Order affirmed.
NOTES
[*] Plaintiff's complaint also alleged three other causes of action. The second was in quantum meruit, the third for conspiracy to deprive the plaintiff of a commission and the fourth for related relief against other defendants. These play no part on this appeal.