■ STANITA REALTY CORP. et al., Appellants, v HUGHES AIRCRAFT COMPANY, Respondent.—In an action to recover rents allegedly due and damages for wrongful termination of a lease, plaintiffs landlords appeal from (1) so much of an order of the Supreme Court, Kings County (Pizzuto, J.), dated October 24, 1984, as denied that branch of their motion, as sought partial summary judgment on their claim for damages for wrongful termination of a lease, and (2) so much of a judgment of the same court, entered November 14, 1984, as failed to grant partial summary judgment on that claim.

Appeal from the order dated October 24, 1984 dismissed. That order was superseded by the judgment entered November 14, 1984 (see, Matter of Aho, 39 NY2d 241, 248).

Judgment entered November 14, 1984 reversed, insofar as appealed from, order dated October 24, 1984 vacated, insofar as it denied that branch of plaintiffs' motion as sought partial summary judgment on their claim for damages for wrongful termination, said branch of plaintiffs' motion granted, and matter remitted to Special Term for a determination of damages incurred as a result of the wrongful termination of the lease (see, CPLR 3212 [c]).

Plaintiffs are awarded one bill of costs.

In or about March of 1981, defendant lessee Hughes Aircraft Corporation (hereinafter Hughes) informed plaintiffs lessors that it was interested in leasing certain premises owned by plaintiff on which it intended to construct an earth satellite communication facility, more commonly known as an "earth station". Hughes had first offered to purchase the property, but plaintiffs declined. Negotiations thereafter ensued and the parties entered into a 20-year lease which was to commence on May 1, 1981. The relevant provisions of the lease disclose that the parties sought to fashion a chronologically tiered series of termination options pursuant to which Hughes could cancel in the event that certain irremediable obstacles arose, thereby frustrating the purpose of the lease. Under the first option, exercisable only during the first eight months of the lease, Hughes could terminate without further liability if it established, through documentary proof, that the premises were "unsuitable" for the construction, use, and operation of an earth station. Under the second option, Hughes was entitled to terminate the lease if, without fault on its part, it had lost or never procured the requisite governmental permits and approvals necessary to operate the earth station facility. Notably, "unsuitability" is not a basis supporting termination after the expiration of the first option period.

The third option was similar to the second in that Hughes had to establish that its loss of permits was "without fault". In the event that permits had, without fault, never been procured, Hughes, in order to terminate, could not have operated the premises as an earth station, could not otherwise be in default and had to pay a sum of $50,000 to plaintiffs.

By letter dated February 28, 1983, some 14 months after the first termination option expired, Hughes notified plaintiffs that it was exercising its option to cancel pursuant to the second option premised upon its inability to obtain the requisite governmental approvals and permits. The only documentary proof submitted in support of the notice was a letter addressed to Hughes from its engineers which stated in pertinent part, "[w]e have reviewed our files and find the reason for abandoning the Eisenberg site was because of space limitations". In Hughes' notification letter, the aforesaid document was described as "establishing that the premises are not suitable for the construction, use, maintenance and operation" of an earth station. Plaintiffs rejected the aforesaid notification, advising that the "Unsuitability" option had expired and that the supporting document did not establish Hughes' ina-

bility, without fault, to obtain government permits. Subsequently, by letter dated April 27, 1983, Hughes tendered a "supplemental notice of termination" which included a letter from the senior vice-president of the Public Development Corporation and the District Manager of Community Board No. 5 who offered their unofficial opinions that certain governmental approvals could not, in any event, have been obtained for the site. This supplementary notice was also rejected as insufficient. Thereafter, the dispute between the parties reached an impasse and plaintiffs instituted the instant suit seeking to recover overdue rents and liquidated damages for wrongful termination of the lease. By notice of motion dated June 20, 1984, plaintiffs sought partial summary judgment as to Hughes' liability for wrongful termination of the lease and the recovery of the overdue rents. Special Term, without opinion, granted the motion as to the rents due but denied that branch of plaintiffs' motion which sought judgment for wrongful termination of the lease.

Initially, we note that to defeat a motion for summary judgment, "the opponent must present evidentiary facts sufficient to raise a triable issue of fact, and averments merely stating conclusions, of fact or of law, are insufficient" *(Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.,* 32 NY2d 285, 290). Moreover, "it is not enough for the opponent to show that an agreement is ambiguous permitting the introduction of parol evidence. The opponent must also disclose in evidentiary form the particular parol evidence, if any, on which it relies * * * Otherwise, there are only documents to interpret, and the court may resolve ambiguities appearing in the documents on a motion for summary judgment" *(Mallad Constr. Corp. v County Fed. Sav. & Loan Assn., supra,* at p 290). Since Hughes merely argues that the relevant termination provisions are ambiguous without tendering extrinsic evidence in order to resolve the alleged ambiguities, there are only documents to interpret and this court may therefore construe the provisions of the lease in dispute *(cf. Olson Enters. v Agway, Inc.,* 55 NY2d 659, 661).

Review of the materials tendered in support of Hughes' initial termination notification discloses that the premises were abandoned not because governmental permits were "without fault" never procured, but rather because the site was simply too small, i.e., physically "unsuitable" for the construction of an earth station. Hughes' notification letter confirms this assessment since it is stated therein that "enclosed is documentation establishing that the premises are not

suitable for the construction, use, maintenance and operation" of an earth station. Moreover, Hughes' "supplemental" termination notice, tendered in support of its right to cancel because of never having procured governmental consents, merely consists of personal letters authored by individuals who theorize that the requisite permits could not have been obtained. Hughes, however, submitted no evidence that it had ever made application for any of the governmental permits necessary to construct and operate the facility. Nevertheless, Hughes argues that its termination notices established that it was impossible to operate the type of earth station planned, and therefore, that no licensing authority would ever have issued permits for the site. If Hughes had been of the opinion that the site was unsuitable, it should have notified plaintiffs within the time specified under the first option. This Hughes failed to do. Termination pursuant to the second option could only be accomplished if Hughes "without fault in its part, ha[d] lost, or ha[d] never procured, the governmental approvals". The record indicates that Hughes never made any application to the Federal Communications Commission for a license permitting it to operate an earth station at the leased premises. Indeed, prior to its attempt to terminate, Hughes purchased another, larger site for which it apparently did obtain the requisite Federal Communications Commission permit.

Hughes was aware that the lease contained tiered termination options specifying time periods and corresponding termination bases but, nevertheless, did nothing until the unsuitability termination basis was no longer available. Hughes' "futility" contention is merely a claim that the leased premises were "unsuitable" for the construction of an earth station. Lazer, J. P., Gibbons, Thompson and Kunzeman, JJ., concur.