■ DESCO VITRO GLAZE OF SCHENECTADY, INC., Appellant, v . MECHANICAL CONSTRUCTION CORPORATION, Respondent.—Levine, J. Appeal from an order and judgment of the Supreme Court (Lynch, J.), entered October 24, 1988 in Schenectady County, which granted defendant's motion for summary judgment dismissing the complaint.

In November 1982 defendant, engaged by International Business Machines Corporation (hereinafter IBM) as the general contractor for the construction of an industrial waste treatment facility, entered into a written subcontract with plaintiff. Plaintiff was to furnish labor, materials, equipment and supervision for the installation of Dex-O-Tex Cheminert K seamless flooring (hereinafter Dex-O-Tex) at the facility, as called for under the specifications of the general contract. This subcontract was expressly subject to the contract between defendant and IBM.

On February 13, 1984, plaintiff received a mailgram from defendant's vice-president which confirmed a telegram delivered February 10, 1984 announcing that the specifications for the seamless flooring had been revised, thereby eliminating the work under the subcontract. The revision called for the installation of Ameron 100 Epoxy flooring (hereinafter Ameron) in place of Dex-O-Tex pursuant to a field order issued by IBM to defendant. Plaintiff claims that it was at all times ready to perform its work.

Plaintiff commenced this breach of contract action against defendant seeking damages in the sum of $38,756 for expenses incurred and lost profits. After service of its answer and

pretrial discovery, defendant moved for summary judgment dismissing the complaint. Supreme Court granted defendant's motion and this appeal by plaintiff ensued.

We affirm. It is uncontested that the subcontract between plaintiff and defendant incorporated the terms and conditions of defendant's general contract with IBM. Moreover, plaintiff's president conceded that he had read the general contract conditions before signing the subcontract on plaintiff's behalf. Under the general contract (art 23.2), IBM had the untrammeled right to "abandon, postpone or terminate the *work* or any part thereof *for any* * * * *reason,* including the failure of [defendant] and IBM to agree upon the pricing of work in accordance with Article 9.1-9.6" (emphasis supplied), by giving 10 days' written notice. Upon such termination by IBM, defendant was obligated at IBM's direction to terminate any referrable subcontracts to the terminated portion of the work (art 23.3).

It is also uncontradicted that IBM duly notified defendant that it was terminating that portion of the general contract covering installation of Dex-O-Tex, which was subcontracted to plaintiff, and directed the cancellation of plaintiff's subcontract, all pursuant to the foregoing provisions of the general contract. In opposing defendant's motion for summary judgment dismissing the complaint, plaintiff's sole ground for denial of the motion was its factual averments that, contemporaneous with the cancellation of its subcontract, IBM and defendant merely substituted Ameron to be installed by another subcontractor and that the product installed was not significantly different from the Dex-O-Tex plaintiff was to install as called for under the original contract documents.

As the foregoing clearly reveals, plaintiff's defense to what appears to be IBM's right to terminate *at will* any part of the work called for by the general contract, in order to defeat summary judgment, is dependent upon a construction of the termination clause *not* to apply where, as stated in the affidavit of plaintiff's president, there is merely "a *substitution* of one seamless flooring for another" (emphasis in original). However, plaintiff has not submitted any parol evidence in its opposing papers to support its bare conclusory claim that IBM's contractual right to terminate at will should not be construed to extend to a "substitution" of flooring installation equivalent to plaintiff's installation. Under firmly established precedent, where on summary judgment the opposing party fails to submit extrinsic evidence in support of its interpretation of a contract or other instrument, the resolution of any

ambiguity in terms is a matter of law for the court, and the motion should be granted *(Olson Enters. v Agway, Inc.,* 55 NY2d 659, 661; *Schuler-Haas Elec. Co. v Aetna Cas. & Sur. Co.,* 40 NY2d 883, 885; *Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.,* 32 NY2d 285, 290).

It follows that whether the termination clause of the general contract covers the situation plaintiff describes, i.e., the termination of the flooring installation called for under the general contract and plaintiff's subcontract, and the substitution of an equivalent installation, is a question which this court must determine as a matter of law. We are of the view that whatever ambiguity exists must be resolved in favor of defendant. First, the clause clearly provides for termination at IBM's will "for any * * * reason". Second, the provision refers to the termination of all or any part of the "work". That term is defined in the general contract (art 1.2) as the *"materials,* labor, services * * * necessary for the complete performance of this Contract" (emphasis supplied). Thus, the cancellation of one flooring "material" specified in the contract literally falls within the termination clause, irrespective of whether an equivalent material is substituted. Third, the reasons for IBM's termination of any part of the work may include, *inter alia,* the "failure of [defendant] and IBM to agree upon the pricing of work in accordance with Article 9.1-9.6" (art 23.2). Articles 9.1 through 9.6 contain provisions covering changes in the work increasing or decreasing the total contract price. In other words, IBM retained the right to terminate all or any part of the work in the event it directed a change in performance and could not reach agreement with defendant on pricing the effect of the change. Clearly, this encompasses a right to terminate despite the later duplication of the canceled performance by another contractor, a situation inconsistent with plaintiff's interpretation. Finally, under the general contract (art 1.7) IBM retained absolute discretion to determine what might constitute the substitution of "or-equal" materials for materials specifically called for under the contract. Thus, plaintiff assumed the risk of IBM's determination that the flooring material later installed in substitution for plaintiff's performance was not the equivalent of the product originally specified in the contract documents, and plaintiff's claim of equivalency is irrelevant.

On the basis of all of the foregoing, the parties' agreement should be construed to have permitted application of the termination-at-will clause to the facts of the instant case. Since the uncontroverted facts clearly establish that plaintiff

failed to timely avail itself of its sole contractual remedy in the event of termination, i.e., reimbursement for unpaid costs incurred plus a percentage markup, although defendant had offered its assistance in obtaining this remedy, the complaint must also be dismissed insofar as it may claim this remedy as an item of damages.

Finally, we disagree with plaintiff's contention that a question of fact exists as to whether defendant breached an implied covenant of good faith and fair dealing in canceling plaintiff's performance. Not a scintilla of evidence was submitted by plaintiff suggesting that defendant's termination of the subcontract was made in bad faith. In actuality, under the general contract provisions previously described, defendant had no choice but to comply with IBM's direction to terminate plaintiff's subcontract. That duty, together with defendant's spontaneous offer to assist plaintiff in proceeding toward obtaining recovery for expenses from IBM, clearly belie any inference of defendant's bad faith. Any bad faith on IBM's part which the facts and circumstances might arguably suggest cannot be imputed to defendant.

For all of the foregoing reasons, Supreme Court was correct in granting defendant summary judgment dismissing the complaint.

Order and judgment affirmed, with costs. Yesawich, Jr., Levine and Mercure, JJ., concur.

Mikoll, J. P., dissents and votes to reverse in a memorandum. Mikoll, J. P. (dissenting). In interpreting a contract, it is for the court to ascertain and give effect to the intent of the parties expressed in the written contract and where that intent can be gathered from the writing, interpretation is a question of law *(Central Trust Co. v Sheahen,* 66 AD2d 1015; *see, Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.,* 32 NY2d 285, 291). But, when a term is ambiguous and the determination of the intent of the parties depends on the credibility of extrinsic evidence or a choice among reasonable inferences to be drawn from extrinsic evidence, such determination is for the trier of the facts *(Hartford Acc. & Indem. Co. v Wesolowski,* 33 NY2d 169, 172).

Article 23.2 of the general contract provides IBM broad authority to terminate contracts into which it enters. Article 23.3 of said contract provides, in part, that "[i]n the event of the termination of this Contract or a part thereof by IBM, the Contractor shall then, as directed by IBM, terminate some or all of its subcontractors". Clearly these provisions gave IBM

the right to terminate the work for which the parties had contracted and authorized defendant to terminate the subcontract with plaintiff in the event such action was taken by IBM. However, it appears that the termination clause of the contract is ambiguous and is dependant on extrinsic evidence. A question of fact arises as to whether the work was terminated or whether IBM merely substituted one type of seamless floor covering (Ameron) for another (Dex-O-Tex).

In *Kenyon v Knights Templar & Masonic Mut. Aid Assn.* (122 NY 247, 254), the Court of Appeals stated: "It may preliminarily be observed that, as a general rule, the construction of a written instrument is a question of law for the court to determine, but when the language employed is not free from ambiguity, or when it is equivocal and its interpretation depends upon the sense in which the words were used in view of the subject to which they relate, the relation of the parties and the surrounding circumstances properly applicable to it, the intent of the parties becomes a matter of inquiry, and the interpretation of the language used by them is a mixed question of law and fact". The affidavit of Joseph Cordi, plaintiff's president, submitted in opposition to defendant's motion for summary judgment, describes the change not as a termination of the work but as a substitution of one seamless flooring for another, a situation, as Cordi described, "no different than if a painter is told to paint a house yellow instead of white, his work still exists". Based on the proof submitted, plaintiff did not consider the phrase "abandon, postpone or terminate the work" in article 23.2 of the general contract to mean that its work could be terminated if there was merely a change in the material to be used in the performance of the work yet to be done. The word "terminate" is susceptible to different meanings. Moreover, the party which draws the contract and offers it should have any ambiguity resolved against it *(Guardian Life Ins. Co. v Schaefer,* 70 NY2d 888, 890). Defendant offered the subcontract here which plaintiff accepted.

Significantly, the work that was to be done at the IBM facility by plaintiff was done by another subcontractor at the facility with the changed or substituted flooring material. Moreover, considering the facts and circumstances of this case, it cannot be said that defendant made a prima facie showing of entitlement to judgment as a matter of law by tendering sufficient evidence to eliminate any material issues of fact from the case *(see, Winegrad v New York Univ. Med. Center,* 64 NY2d 851, 853).

I find merit in plaintiff's contention that there is a question of fact as to whether defendant breached an implied covenant of good faith and fair dealing *(see, Kirke La Shelle Co. v Armstrong Co.,* 263 NY 79, 87) in (1) canceling the contract shortly after a change order increasing the contract price had been issued and shortly before the rescheduled date for commencement of its work, and (2) prior to the cancellation, continually meeting with the contractor at the site preparing for the work. The issue of whether such a breach occurred is generally a question of fact *(see, Pernet v Peabody Eng'g Corp.,* 20 AD2d 781, 782).

Finally, plaintiff properly contends that it has asserted a cause of action for damages *(see, Kenford Co. v County of Erie,* 73 NY2d 312, 319). Whether there was a waiver of its claim for damages under the provisions of the contract is a question of fact.

The order and judgment of Supreme Court should be reversed and defendant's motion for summary judgment denied.