MANCHESTER KNITTED FASHIONS,
INC., Plaintiff, Appellee,

v.

AMALGAMATED COTTON GARMENT
AND ALLIED INDUSTRIES FUND,
and its Trustees: Olga Diaz, Henry
Dropkin, Garry Ferraris, John Fox, Ar-
thur R. Loevy, Daniel Myers, Frank
Nicholas, Antillio Sant'Antonio, Jack
Sheinkman, Joan Suarez, Benedict Ber-
kowitz, Howard Corbin, Mark Fishman,
Eric Margolin, Charles Miller, Bruce
Moore, Houston Payne, Benjamin
Rothfeld, George Silva, and Roger
Webb, Defendants, Appellants.

No. 91–1764.

United States Court of Appeals,
First Circuit.

Argued Feb. 7, 1992.

Decided June 16, 1992.

Robert M. Schanzer, with whom Solomon & Rosenbaum, Drechsler & Leff and Judith A. Stoll, New York City, were on brief, for defendants, appellants.

Steven E. Grill, Manchester, N.H., with whom Devine, Millimet & Branch, P.A., Manchester, N.H., was on brief, for plaintiff, appellee.

Before TORRUELLA, Circuit Judge, ALDRICH and BOWNES, Senior Circuit Judges.

TORRUELLA, Circuit Judge.

This is an appeal by Amalgamated Cotton Garment and Allied Industries Fund and its Trustees, collectively, "the Fund" from an order granting appellee, Manchester Knitted Fashions Inc.'s ("MKF") partial summary judgment, declaring certain insurance withdrawal liability rules unen-

forceable and forbidding their implementation. Also before this Court are several procedural and jurisdictional issues; whether the court has jurisdiction to consider the merits of this appeal and whether the Fund waived its challenge to venue. We affirm, holding that the partial summary judgment is appealable as an injunction, that the Fund waived its challenges to venue and that the district court properly held the withdrawal liability rules unenforceable.

A cursory review of the background and facts leading to the summary judgment is all that is needed to discuss the preliminary issues. Upon discussion of the merits, the relevant facts will be outlined in turn.

1. The Fund

The Fund is the sponsor of a multi-employer, employee welfare benefit plan as defined in section 3(1) of the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1002(1). It was created pursuant to an Agreement and Declaration of Trust, ("Trust Agreement") in order to provide health and welfare benefits to employees of employers who have entered into collective bargaining agreements with the Amalgamated Clothing and Textile Workers Union and its affiliated locals ("the Union"). The Fund was established in 1945 in New York City and nearly all of its business is carried out from its New York City office. The Fund provides welfare benefit coverage to about 48,286 active participants of which about 126 are employed in New Hampshire.

2. The Collective Bargaining Agreement

MKF a New Hampshire corporation and contributor to the Fund, was a party to a collective bargaining agreement with the Union effective September 1, 1988. Under the Collective Bargaining Agreement MKF makes contributions to the Fund and pursuant to a Supplemental Agreement, Trustees are authorized to increase employer contribution rates to the Fund during the term of the agreement.[1] On May 25, 1989,

---

**1.** As is discussed below, the extent of the Trustees' power to raise funds pursuant to this provi-

the Fund and the Trustees amended the Trust Agreement to authorize the establishment of *withdrawal liability rules.* By letter dated June 30, 1989, the Fund informed all employers participating in the plan that the Fund would assess withdrawal liability against any employer withdrawing from the Fund on or after July 1, 1989. MKF challenged the authority of the Fund and the Trustees to adopt these insurance withdrawal liability rules and was granted partial summary judgment as to count IV of their complaint,[2] enjoining the enforcement of the rules. The Fund filed this appeal.

## DISCUSSION

### 1. Appellate Jurisdiction

At the outset we must determine whether this court has appellate jurisdiction to consider this interlocutory appeal. According to the Fund, the granting of partial summary judgment effectively granted MKF an injunction thus jurisdiction is invoked by 28 U.S.C. § 1292(a)(1) which reads in pertinent part:

(a) Except as provided in subsection (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts of the United States, ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court.

We agree.

 Although the district court did not specifically grant injunctive relief to MKF, we consider the substantial effect of the order and not the terminology employed by the court in deciding whether an appeal is available under the statute. *Avery v. Secretary of Health and Human Services,* 762 F.2d 158, 160 (1st Cir.1985) (citations omitted). It is generally established that in order for an interlocutory

order to be appealable, a litigant must also show that the "order of the district court might have a 'serious, perhaps irreparable, consequence,' and that the order can be 'effectually challenged.' " *Carson v. American Brands, Inc.,* 450 U.S. 79, 84, 101 S.Ct. 993, 997, 67 L.Ed.2d 59 (1981). However in a case such as this one, where the flow of withdrawal liability payments has been stopped, this burden is almost always met and immediate appeal is available. *I.A.M. Nat. Pension Fund v. Cooper Industries, Inc.,* 789 F.2d 21, 25 (D.C.Cir.), *cert. denied,* 479 U.S. 971, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986); *Pantry Pride v. Retail Clerks Tri-State Pension,* 747 F.2d 169, 171 (3d Cir.1984). Congress recognized the importance of the continued flow of these benefits because it "believed that it was important to insure that the flow of employer withdrawal liability payments was not delayed by an employer disputing liability." *I.A.M. Nat. Pension Fund,* 789 F.2d at 25 (citing Senate Committee on Labor and Human Resources, Summary and Analysis of S. 1076, 96th Cong., 2d Sess. (1980), *reprinted in* Special Supp. 310, Pens.Rep. (BNA) 81, 84–85 (1980); H.R.Rep. No. 869, 96th Cong., 2d Sess. 84, *reprinted in* 1980 U.S.C.C.A.N. 2918, 2952). The damage to the Fund could be irreparable in that stoppage of the flow of funds could effectively deprive benefactors of the Fund, the employees, of their otherwise protected benefits. Furthermore, should MKF ultimately prevail on the merits "[a]dequate safeguards exist to insure that [it] will promptly recover any repayment in a lump sum with interest." *I.A.M. Nat. Pension Fund,* 789 F.2d at 25 (citing 29 C.F.R. § 2644.2(d) (1985)). MKF petitioned the court, via a motion for summary judgment, to enjoin the enforcement of the Trust Agreement. The court granted summary judgment to that effect. Thus we conclude that this Court has jurisdiction to entertain this interlocutory appeal as the summary judgment order effectively granted injunctive relief.

---

sion is the fundamental issue on appeal.

**2.** Count IV petitioned in pertinent part for relief by "enjoining the Trustees from attempting to

implement or enforce" the withdrawal liability rules adopted in the supplemental agreement.

### 2. Venue

In a prior order entered on April 30, 1991, the district court denied the Fund's motion to dismiss for improper venue. On appeal the Fund also challenges the propriety of that order. MKF on the other hand claims that a) the Fund failed to properly preserve the issue for appeal; b) the Fund waived its challenge to venue; and c) the district of New Hampshire was the proper venue.[3]

MKF filed its complaint on July 6, 1990. The complaint was served by mail and received by the Fund on July 11, 1990. In the interim alleged consultations had begun between the Fund and MKF employees regarding the "opt out" provision of the Trust Agreement and the Fund's withdrawal liability. Because MKF was involved in wage renegotiations with its employees and feared that the Fund's contact with the employees regarding the "opt out" provision could cause difficulty in those negotiations, MKF filed a motion on August 14, 1990, for an *ex parte* temporary restraining order and a preliminary injunction seeking to enjoin the Fund from communicating with the employees regarding the "opt out" program. On August 16th, the Fund requested and MKF consented to granting an extension of time in which the Fund would file an answer to the July 6th complaint. On that same date, the Fund, without objecting to venue, also filed a "Motion to Request Hearing on Plaintiff's Motion for an *Ex Parte* Temporary Restraining Order" and a motion to permit its New York counsel to appear *pro hac vice*.

A stipulation and order was filed on August 17, 1990, whereby the parties agreed to dismiss the motion for the temporary restraining order. The parties also entered into a stipulation and order agreeing to certain expedited discovery and limiting communications with the Union. In addition, the stipulation provided for a hearing on the preliminary injunction should their dispute not be resolved by the discovery.[4] The stipulation was entered in the district court record, *"so ordered"* on September 12, 1990. Still there was no objection raised to venue by the Fund. Not until September 14, 1990, did the Fund file an answer and for the first time contested venue.

The Supreme Court has held that both venue and personal jurisdiction are personal privileges which may be waived. *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180, 99 S.Ct. 2710, 2714, 61 L.Ed.2d 464 (1979); *Neirbo Co. v. Bethelehem Shipbuilders Corp.*, 308 U.S. 165, 167–68, 60 S.Ct. 153, 154–55, 84 L.Ed. 167 (1939); *United States v. Systems Architects, Inc.*, 757 F.2d 373, 378 (1st Cir.) (citing *Singer v. United States*, 380 U.S. 24, 35, 85 S.Ct. 783, 790, 13 L.Ed.2d 630 (1965)), *cert. denied*, 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 115 (1985). Fed.R.Civ.P. 12(h)(1) provides that:

> A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived ... (B) if it is neither made by motion under the rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.

The purpose of Rule 12 is to eliminate unnecessary delays in the early pleading stages of a suit so that all available Rule 12 defenses are advanced before consideration of the merits. *Marcial Ucin, S.A. v. SS Galicia*, 723 F.2d 994, 997 (1st Cir.1983) (citations omitted). And as we stated in *Glater v. Eli Lilly & Co.*, 712 F.2d 735 (1st Cir.1983), "it is clear under this rule that

---

**3.** The Fund also claims that the District Court of New Hampshire was not the proper venue. MKF asserts that the venue issue was not properly preserved for appeal. Because we agree with the district court that the Fund waived any objections to venue, our consideration of the other venue claims is necessarily obviated.

**4.** Specifically paragraph 5 of the stipulation and order provided that:

> The parties hereby jointly request that the Court schedule a hearing on the Plaintiff's Motion for a Preliminary Injunction on September 17 or 18, 1990. The parties further request that in the event the Plaintiff determines not to withdraw its Motion after the discussions referred to above, then in such event the Court proceed to hear and determine the Motion for a Preliminary Injunction.

defendants wishing to raise any of these four defenses **must do so in their first defensive move,** be it a Rule 12 motion or a responsive pleading." *Id.* at 738 (emphasis supplied). Also, "[i]f a defendant interposes a pre-answer motion that **fails to object to venue** ... he effectively has waived his right to obtain a dismissal on the ground of lack of venue." Wright & Miller, *Federal Practice and Procedure* § 1352 at 273–74 (1990) (footnotes omitted) (emphasis supplied). Finally, an objection to venue may also be waived "by submission [in a cause] through conduct." *Neirbo Co.,* 308 U.S. at 168, 60 S.Ct. at 155.

In holding that the Fund had waived its objection to venue the district court aptly reasoned:

> [T]he defendants objected to the court's venue for the first time in their answer filed almost nine weeks after the complaint was served and almost four weeks after they submitted to the court's order adopting the stipulation of the parties. The defendants had over one month to preserve the defense of improper venue before they entered into their stipulation, which is certainly adequate time to sufficiently apprise them of any question as to venue.... Furthermore, the defendants submitted to the jurisdiction of the court by twice requesting hearings on the plaintiff's motions for a temporary restraining order and for a preliminary injunction and by its motion to permit the defendants' New York attorneys to appear in this court pro hac vice. [sic]

*Manchester Knitted Fashions Inc. v. Amalgamated Cotton Garment and Allied Industries Fund, et al.,* No. C–90–310–L, 1990 WL 383798, Order of November 30, 1990 at 6–7. We agree fully.

The Fund unconvincingly argues that in light of the emergency situation, the *ex parte* TRO, and the fact that local counsel was secured only one day prior to the filing of the motion for a hearing on the TRO, the Fund was put into a "procedural straight-

jacket against which it is entitled to protection under the Federal Rules." [5] Because a motion to dismiss for lack of venue or an answer contesting venue can be raised so easily, we strictly apply the waiver rule established in Fed.R.Civ.P. 12(h)(1). We see nothing in the record which would have prevented the Fund from raising this motion or defense in conjunction with or before the motion for a hearing on the TRO or before entering into a stipulation whereby it submitted itself to the jurisdiction of the district court. To the contrary, the Fund had more than ample time to contest venue, yet waived the opportunity to do so. Equally unavailing is the fact that the Fund had secured local counsel only one day before filing the motion to request a hearing. Someone prepared the motion for the hearing on the TRO, the motion for New York counsel to appear *pro hac vice* and the motion for an extension of time in which to file an answer. These parties could have just as easily inserted a sentence or paragraph in the motion first filed in the district court,[6] preserving the venue issue. They did not. Thus the defense was waived.

We are further convinced of the propriety of the district court's ruling by the Fund's conduct. Besides making the appearances noted above, the Fund conducted itself in a way demonstrating that it unmistakingly submitted itself to the jurisdiction of the New Hampshire court. By jointly entering a stipulation whereby the Fund agreed to cease certain practices pending expedited discovery and communications with MKF and then subjecting itself to the court's authority for a hearing on the preliminary injunction should the parties not amicably resolve MKF's concerns as per the stipulation and order, the Fund clearly submitted itself in the cause through its conduct. *Neirbo Co.,* 308 U.S. at 168, 60 S.Ct. at 154.

*Slotnik Co. v. Clemco Industries,* 127 F.R.D. 435, 441 (D.Mass.1989) (citing *Martinez v. Picker International, Inc.,* 635 F.Supp. 658, 659 (D.P.R. 1986)).

---

**5.** Appellants brief at p. 18.

**6.** We recognize that a motion for an enlargement of time in which to file a responsive pleading does not constitute a waiver of venue. *J.*

Although non-binding, we think the district court properly relied on the analysis in *Marquest Medical Products Inc. v. EMDE Corp.*, 496 F.Supp. 1242 (D.Colo.1980) in determining that venue was waived. In that case as here defendants submitted to an order and stipulation pursuant to a motion for a restraining order filed by the plaintiff. Defendants then participated in some discovery and waited six to ten weeks before challenging venue.

We are also in accord with the district court's reliance on *Wyrough & Loser Inc. v. Pelmor Laboratories, Inc.*, 376 F.2d 543, 547 (3d Cir.1967) (one week sufficient time to prepare jurisdictional defense before hearing without being put in "procedural straight jacket"). *See also Trans World Airlines, Inc. v. Mattox*, 897 F.2d 773, 786 (5th Cir.) (held that where parties who were not named in the complaint nor served with a copy thereof, objected to the filing of a TRO by plaintiff, they had submitted to the jurisdiction of the district court and waived their Rule 12(b) objections challenging personal jurisdiction), *cert. denied*, —— U.S. ——, 111 S.Ct. 307, 112 L.Ed.2d 261 (1990); *Marcial Ucin, S.A.*, 723 F.2d 994 (1st Cir. 1983) (where third party defendant did not file Rule 12 motion to dismiss nor a responsive pleading, he nonetheless submitted himself to the cause by participating in some thirteen depositions and thus had waived any challenge to service of process); *Broadcast Music, Inc. v. M.T.S. Enterprises, Inc.*, 811 F.2d 278 (5th Cir.1987) (defendants objection to and appeal of the district court's entry of default judgment waived his Rule 12(b) objection to improper service of process because he voluntarily appeared, even though he filed no motions or pleadings prior to entry of default); *U.S. Combustion Systems v. Eastern Metal Products and Fabricators, Inc.*, 112 F.R.D. 685 (M.D.N.C.1986) (held that where no answer was filed yet defendant engaged in settlement negotiations and moved to set aside a default judgment, defendant had waived his right to challenge service under Rule 12(b)).[7] Concluding that the Fund has

waived any challenge to venue, we now pass to the merits.

## STANDARD OF REVIEW

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered against a party who, after adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). We review the district court's grant of summary judgment *de novo* considering the record in a light most favorable to the non-movant. *Rivera–Muriente v. Agosto–Alicea, et al.*, 959 F.2d 349, 351–52 (1st Cir.1992); *Elliott v. Cheshire County*, 940 F.2d 7, 8 (1st Cir.1991).

### 1. Withdrawal Liability

■ Article XXX(A) of the September 1, 1988, Collective Bargaining Agreement provides that MKF is required to make contributions to the Fund "payable for each pay period to all of the employees of [MKF] as determined by the Trustees of the Fund **in accordance with the Fund Supplemental Agreement.**" (emphasis supplied). The September 1988 Trust Agreement, to which MKF was not originally a partner, at paragraph 14 authorizes the Trustees to "determine the immediate and long term financial requirements of the Trust Funds and ... **establish a policy and method of funding.**" (emphasis supplied). Paragraph 6. A. of the May 1989 Supplemental Agreement provides that "[t]his Supplemental Agreement and the Collective Bargaining Agreement and the Agreement and Declaration of Trust [the Trust Agreement] **shall be construed as a single document....**" (emphasis supplied). Moreover, paragraph 20 of the May 1989 Supplemental Agreement provides that "[t]he provisions of this Agreement may be amended **to any extent at any time from**

---

**7.** Because challenges to jurisdiction over the person, venue, insufficiency of process and insufficiency of service of process are all waived under Fed.R.Civ.P. Rule 12(h)(1), the jurisprudence discussing waiver to any of the above applies by analogy to waiver of improper venue.

time to time...." (emphasis supplied). According to the Fund, MKF, by virtue of paragraph 6. A. of the Supplemental Agreement, became a party to the Trust Agreement. Pursuant to paragraph 20 of the Supplemental Agreement, the Trust Agreement was amended to provide for withdrawal liability. Even though there is no mention, or any evidence of its contemplation in any of the myriad of agreements, the Fund claims that, construing all the agreements as a single document, it has contractual authority to unilaterally impose withdrawal liability on those participants withdrawing from the Fund after July 1989. Like the district court, we think naught. Because we hold that the Fund's interpretation of the agreements is unreasonable under the general construction of contracts, we need not delve into a discussion on the law of trusts.[8]

It is textbook law that "a contract is to be construed as meaningful and not illusory." *Cofman v. Acton Corp.*, 958 F.2d 494, 497 (1st Cir.1992). And, "[i]n interpreting [a] contract[ ], the fundamental inquiry is to determine the intent of the parties at the time of the agreement," *Post Machinery Co. Inc. (MA) v. Tanges*, 705 F.Supp. 55, 59 (D.N.H.1989) (citation omitted) and to interpret it in such a way so as "to give effect to the expressed intentions of the parties." *Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir.1985) (citing *Hartford Accident & Indemnity Co. v. Wesolowski*, 33 N.Y.2d 169, 171–72, 350 N.Y.S.2d 895, 898, 305 N.E.2d 907, 910 (1973); *Mallad Construction Corp. v. County Federal Savings & Loan Association*, 32 N.Y.2d 285, 291, 344 N.Y.S.2d 925, 930, 298 N.E.2d 96, 101 (1973); *Airco Alloys Division, Airco, Inc. v. Niagara Mohawk Power Corp.*, 76 A.D.2d 68, 77, 430 N.Y.S.2d 179, 1984 (4th Dep't 1980); 4 S. Williston, *Williston on Contracts* § 600 (3d ed. 1961)). Furthermore a contract is to be interpreted in a manner which gives reasonable effect to its

terms and conditions. *Id.; Merrill Lynch Commodities Inc. v. Richal Shipping Corp.*, 581 F.Supp. 933, 939 n. 14 (S.D.N.Y. 1984).

We think it unreasonable to say pursuant to the May 1989 Supplemental Agreement, which incorporated the Trust Agreement to which MKF was not a partner, MKF consented to authorize the Fund to unilaterally impose withdrawal liability. This is especially so given the fact that the Trust Agreement is completely silent on the subject of withdrawal liability. We further think it unreasonable to suggest that MKF contemplated the imposition of withdrawal liability when it executed the Supplemental Agreement. The Trust Agreement only states that the Trustees are to "establish a policy and method of funding." In support of its argument, the Fund states that such a result is "simply the price [MKF] paid for participation in a multi-employer fund."

The district court correctly pointed out that the trust contained no provision authorizing imposing a charge for withdrawal, and cited *Local 546 H. & W. Fund v. Lith–O–Kraft Plate Co.*, 692 F.Supp. 782 (N.D.Ohio 1988), to the effect that none was to be implied. To this the Fund responds that in *Local 546* there was an express limit on the amount of charges that could be imposed, whereas here the trustees were given general authority to determine funding "to maintain the level of benefits provided by the Fund." Passing the fact that this related to "weekly benefits," the Fund makes no answer to MKF's assertion that the purpose of this charge is to fund benefits to employees of employers who had previously withdrawn. It is clearly unreasonable. Indeed, on the Fund's interpretation of the trustee's powers, the trustees could do virtually anything at MKF's expense.

For example, should the Trustees determine tomorrow that based on "immediate

---

8. In any event we agree with the district court that withdrawal liability is not provided for here by the law of Trusts or statutorily, by ERISA. *See Manchester Knitted Fashions Inc. v. Amalgamated Cotton Garment and Allied Industries Fund, et al.,* No. C–90–310–L, Order of November 30, 1990 at 4–8 (Trustees were not granted power to construe doubtful terms so as to impose withdrawal liability; and employers participating in health and welfare benefit funds are not statutorily obligated to pay withdrawal liability under ERISA).

and long term financial requirements of the Trust Funds" that MKF should liquidate its assets and that in the Trustees' judgment, this was the "best policy and method of funding," MKF would be bound by this unilateral decision with no recourse. Likewise, if the Fund decided that "immediate and long term financial requirements of the Trust Funds" dictated that MKF be forever barred from withdrawing from the Fund, and that that was the best "policy and method of funding," then MKF would forever be bound to make contributions to the Fund.

The unreasonable possibilities of the Fund's interpretation necessarily precludes our adopting it. Thus we affirm the district court's holding enjoining the imposition of withdrawal liability on MKF.

*Affirmed.*