**Subby MARTELLO, Appellant,**

v.

**CIBA VISION CORPORATION, A Georgia Corporation, Appellee.**

No. 94–1206.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1994.

Decided Dec. 12, 1994.

James Welsh, Omaha, NE, argued, for appellant.

William J. Brennan, Omaha, NE, argued (Gerald L. Friedrichsen, on brief), for appellee.

Before FAGG, Circuit Judge, ROSS, Senior Circuit Judge, and MAGILL, Circuit Judge.

FAGG, Circuit Judge.

Subby Martello developed a corneal infection and lost vision in one eye after using CIBA AOSEPT Catalytic Disinfection System (AOSEPT), a soft contact lens disinfection system manufactured by Ciba Vision Corporation. Alleging AOSEPT caused his loss, Martello brought this products liability action against Ciba Vision raising state tort claims of strict liability, breach of express and implied warranties, and negligence related to AOSEPT's design, inspection, instructions, labelling, warning, and testing. The district court granted summary judgment to Ciba Vision, holding Martello's claims are expressly preempted by the Medical Device Amendments of 1976 (MDA), 21 U.S.C. §§ 360c–360k (1988 & Supp. V 1993). Martello appeals and we affirm.

The MDA gives the Food and Drug Administration (FDA) authority over medical devices and authorizes the FDA to issue implementing regulations. Under the MDA, medical device manufacturers must register each device with the FDA before beginning manufacture. *See* 21 U.S.C. § 360c. After registration, the FDA classifies each device according to the level of regulatory control necessary to provide for the device's safety and effectiveness. *See id.* Because Class I devices present the least risk of harm, they are the most loosely regulated and are subjected only to general controls. *Id.* § 360c(a)(1)(A). Class II devices, including artificial knee joints and tampons, are more heavily regulated and are subject to special controls. *Id.* § 360c(a)(1)(B). Class III devices, like artificial heart valves and contact lens solutions, are the most heavily regulated and must pass premarket approval. *Id.* § 360c(a)(1)(C). To obtain premarket approval, the manufacturer must submit detailed information about the device's testing, design, components, performance standards, manufacturing, packaging, and labelling. *See id.* § 360e(c)(1); 21 C.F.R. § 814.20 (1994). After a panel of experts reviews the application, 21 U.S.C. § 360e(c)(2), the FDA may approve the device for sale if valid scientific evidence reasonably assures the device's safety and effectiveness, *see id.* § 360c(a)(2); 21 C.F.R. § 860.7. When a device has been

approved for sale, the manufacturer must maintain certain records and continue to report to the FDA about the device. 21 U.S.C. § 360i.

■ The district court held Martello's claims were expressly preempted under the MDA's preemption provision, 21 U.S.C. § 360k(a). Under § 360k(a), a state cannot establish a requirement that relates to a device's safety or effectiveness and that differs from, or adds to, any MDA requirement applicable to the device. The FDA has interpreted § 360k(a) as preempting any state requirement, "whether established by statute, ordinance, regulation, or court decision." 21 C.F.R. § 808.1(b). Thus, the MDA's preemptive effect extends to state tort actions. *National Bank of Commerce v. Kimberly–Clark Corp.*, 38 F.3d 988, 990–91 (8th Cir.1994); *Stamps v. Collagen Corp.*, 984 F.2d 1416, 1421 (5th Cir.), *cert. denied,* ── U.S. ──, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993); *Lamontagne v. E.I. Du Pont de Nemours & Co.*, 834 F.Supp. 576, 582 (D.Conn.1993) (citing cases). In a regulation interpreting § 360k(a), the FDA has indicated, "State ... requirements are preempted only when the [FDA] has established specific counterpart regulations or there are other specific requirements applicable to a particular device under the [MDA] ... making any existing divergent [s]tate ... requirements applicable to the device different from, or in addition to, the specific [FDA] requirements." 21 C.F.R. § 808.1(d). Put another way, "[P]reemption does not apply when the FDA has issued no regulations or other requirements specific to the particular device." *King v. Collagen Corp.*, 983 F.2d 1130, 1134 (1st Cir.), *cert. denied,* ── U.S. ──, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993). The FDA's regulations interpreting § 360k(a) are controlling. *See id.* Thus, a state tort claim is preempted only if (1) the FDA has established regulations specific to the medical device in issue, (2) the state claim imposes a requirement different from, or in addition to, any FDA requirement for the device, and (3) the claim relates to the safety or effectiveness of the device, or to any other matter included in an MDA requirement for the device. *Lamontagne*, 834 F.Supp. at 583.

■ Martello concedes AOSEPT is a Class III medical device under the MDA.

*See* 21 C.F.R. § 886.5928 (defining soft contact lens solution as a device intended to clean, disinfect, wet, or store a soft contact lens, and assigning Class III). Martello also concedes the FDA had approved Ciba Vision's premarket application for AOSEPT before Martello used the product. Nevertheless, Martello contends his claims are not preempted because the regulations contain no specific requirements for soft contact lens disinfection systems. We disagree.

■ The premarket approval process is a specific requirement for a device within the meaning of 21 U.S.C. § 360k(a) and 21 C.F.R. § 808.1(d). *Stamps,* 984 F.2d at 1421–22; *Bravman v. Baxter Healthcare Corp.,* 842 F.Supp. 747, 760–61 (S.D.N.Y. 1994); *see also Slater v. Optical Radiation Corp.,* 961 F.2d 1330, 1333 (7th Cir.) (MDA's procedural requirements have same preemptive effect as substantive requirements), *cert. denied,* ─── U.S. ───, 113 S.Ct. 327, 121 L.Ed.2d 246 (1992). The MDA thus expressly preempts state tort claims involving the safety and effectiveness of Class III devices when the claims would impose additional requirements in areas regulated through the premarket approval process. *Stamps,* 984 F.2d at 1421–22; *King,* 983 F.2d at 1134; *Brown v. Medtronic, Inc.,* 852 F.Supp. 717, 719–20 (S.D.Ind.1994) (citing cases). Under this rule, courts have held the MDA preempts state law claims of strict liability, breach of express and implied warranties, misrepresentation, failure to warn, and negligence in design, manufacturing, and labelling of Class III devices because the claims involve areas regulated through the premarket application process. *Stamps,* 984 F.2d at 1421–22; *King,* 983 F.2d at 1134.

FDA approval of a premarket application shows the FDA has reviewed a device's testing, design specifications, intended use, manufacturing method, performance standard, and labelling, *see* 21 U.S.C. § 360e(c)(1), and decided the device is safe and effective, *see id.* § 360c(a)(2). Here, all of Martello's state tort claims deal directly with AOSEPT's safety and effectiveness and would add requirements in areas reviewed in the premarket approval process. Martello did not claim the AOSEPT he used did not comply with federal regulations, *see Reiter v. Zim-*

*mer, Inc.,* 830 F.Supp. 199, 204 (S.D.N.Y. 1993), or that the AOSEPT he used was contaminated, *see King,* 983 F.2d at 1135 (21 U.S.C. § 360k(a) does not preempt contaminated device claim); *Slater,* 961 F.2d at 1334 (same); *Mendes v. Medtronic, Inc.,* 18 F.3d 13, 19 (1st Cir.1994) (explaining contaminated device claim); 21 C.F.R. § 808.1(d)(6)(ii).

Because Martello's claims are expressly preempted under the MDA, we affirm the district court's grant of summary judgment to Ciba Vision.