Janice RICHMAN, Plaintiff,

v.

W.L. GORE & ASSOCIATES, INC., Defendant.

No. 94 Civ. 6397 (PKL).

United States District Court, S.D. New York.

March 24, 1995.

Mirman, Markovits & Landau, P.C., New York City (Ephrem Wertenteil, of counsel), for plaintiff.

Neal Gerber & Eisenberg, Chicago, IL (John N. Scholnick, Jennifer A. Barrett, of counsel), Hughes Hubbard & Reed, New York City (Norman C. Kleinberg, Daniel H. Weiner, of counsel), for defendant.

## OPINION AND ORDER

LEISURE, District Judge:

This is a product liability action brought by Janice Richman ("Richman") against W.L. Gore & Associates, Inc. ("Gore"), seeking recovery for injuries allegedly resulting from an artificial ligament purportedly manufactured by Gore. Defendant now moves this Court for an order dismissing the action on the grounds that all of plaintiff's claims are preempted by federal law. Alternatively, defendant moves to dismiss plaintiff's claims for failure to state a claim upon which relief can be granted. For the reasons stated below, defendant's motion for dismissal on the grounds of preemption is granted as to all of plaintiff's claims, except plaintiff's claim for breach of express warranty. Defendant's motion to dismiss for failure to state a claim is granted as to plaintiff's claim for breach of express warranty.

## BACKGROUND

Richman alleges that prior to April 1992, an artificial ligament, allegedly manufactured by Gore, was surgically implanted in her body and that she suffered internal and external injuries while this ligament was in her body. *See* Memorandum of Law in Support of Defendant's Motion to Dismiss ("Defendant Mem.") at 1. Specifically, Richman asserts that the implanted ligament shredded and disintegrated causing foreign body reac-

tions, accelerating the deterioration of the joint,[1] and causing severe allergic reactions and extreme pain and suffering. *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Dismissal ("Plaintiff Mem.") at 3. The artificial ligament that is at issue in the instant action is the Gore–Tex Cruciate Ligament Prosthesis (the "Ligament"). The Ligament was a medical device regulated by the United States Food and Drug Administration (the "FDA"), as a Class III Device. Defendant Mem. at 4. As a Class III device, the Ligament had to be approved for marketing by the FDA pursuant to the premarket approval process. *Id.*

On October 10, 1986, the FDA announced its approval of Gore's premarket approval application for the Ligament. Defendant Mem. at 4. Gore asserts that since that time, it has complied with all FDA regulations and all conditions of the approval, and that the FDA has never acted to obtain either a voluntary or involuntary withdrawal of the premarket approval for the Ligament. *Id.* at 4–5. On May 21, 1993, Gore sent a letter to the FDA withdrawing the premarket approval for the Ligament, effective July 15, 1994. *Id.*

## DISCUSSION

### I. *Standard is that for Summary Judgment*

■ *Defendant's motion to dismiss on the* grounds of preemption is based on the allegations of the complaint and on facts set forth in affidavits and other materials outside of the pleadings. Defendant Mem. at 5. In considering these outside materials, on a motion to dismiss, this Court must convert the motion into a motion for summary judgment and apply the standard appropriate for a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991).

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). Summary judgment "is appropriate only 'after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " *Thornton v. Syracuse Sav. Bank*, 961 F.2d 1042, 1046 (2d Cir.1992) (quoting *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552); *accord Irvin Indus., Inc. v. Goodyear Aerospace Corp.*, 974 F.2d 241, 245 (2d Cir.1992).

■ "In deciding whether to grant summary judgment all inferences drawn from the materials submitted to the trial court are viewed in a light most favorable to the party opposing the motion. The nonmovant's allegations are taken as true and it receives the benefit of the doubt when its assertions conflict with those of the movant." *Cruden v. Bank of New York*, 957 F.2d 961, 975 (2d Cir.1992). The substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying which materials "it believes demonstrate the absence of a genuine issue

---

**1.** Although nowhere mentioned in plaintiff's memorandum of law or complaint, it appears that the joint that is referred to is Richman's left knee. *See* Richman Affidavit, sworn to on an unspecified day in October, 1994, at 1.

of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. Once a motion for summary judgment properly is made, however, the burden then shifts to the nonmoving party, which " 'must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2512 (quoting Fed.R.Civ.P. 56(e)); *accord Brass v. American Film·Technologies, Inc.,* 987 F.2d 142 (2d Cir.1993). "Conclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.' " *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson,* 477 U.S. at 252, 106 S.Ct. at 261, and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)), *cert. denied,* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (citations and quotation omitted).

## II. *Preemption of Non–Specific Claims*

 The first question this Court must decide is whether the Medical Device Amendments ("MDA"), 21 U.S.C. §§ 360c *et seq.,* of the Federal Food, Drug and Cosmetics Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.,* preempt plaintiff's state law tort claims [2] pertaining to the Ligament generally.[3] The Supremacy Clause of the Constitution provides that the laws of the United States "shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Any state law which conflicts with federal law may be preempted.

 In deciding whether federal law preempts state law, a court must (1) assess the comprehensive nature of the federal regulatory scheme; (2) determine if there is a dominant federal interest in the matter to be regulated and if there is a need for national uniformity; and (3) analyze the threat of conflict between state laws and the effective administration of the state program. *See Bravman v. Baxter Healthcare Corp.,* 842 F.Supp. 747, 751 (S.D.N.Y.1994) (Sweet, J.); *Pennsylvania v. Nelson,* 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640 (1956). Supremacy clause analysis begins with the "assumption that the historic police powers of the States [are] not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). A valid state law is preempted, however, when Congress either expressly preempts state law or Congress intends to completely occupy the given field. *See Wisconsin Pub. Intervenor v. Mortier,* 501 U.S. 597, 603–05, 111 S.Ct. 2476, 2481–82, 115 L.Ed.2d 532 (1991). However,

> [w]hen Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a reliable indicium of congressional intent with respect to state authority, there is no need to infer congressional intent to pre-empt state laws from the substantive provisions of legislation.

*Cipollone v. Liggett Group,* —— U.S. ——, ——, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407 (1992) (citations omitted).

 The MDA gives the FDA authority over medical devices and authorizes the FDA to issue implementing regulations. *See Mar-*

---

**2.** All of plaintiff's claims arise out of state common law. Plaintiff alleges that the Ligaments: (1) were negligently designed, manufactured, constructed, distributed and sold, (2) suffered from a defect, breaching implied warranties and triggering strict liability, and (3) were unfit for their intended purpose and therefore breached implied and express warranties. Complaint ¶¶ 12–26.

**3.** This section assesses whether plaintiff's state law claims regarding the general manufacture and design of the Ligament are preempted. The following section analyzes whether plaintiff's claims regarding the specific device implanted in her are preempted.

*tello v. CIBA Vision Corporation*, 42 F.3d 1167, 1168 (8th Cir.1994). Under the MDA, medical device manufacturers must register each device with the FDA before beginning manufacture. *See id.;* 21 U.S.C. § 360c. "After registration, the FDA classifies each device according to the level of regulatory control necessary to provide for the device's safety and effectiveness." *Martello*, 42 F.3d at 1168. Class I devices present the least risk of harm and are the most loosely regulated; Class II devices are more heavily regulated; and Class III devices, such as the Ligament, are the most heavily regulated and must pass premarket approval. *See id.;* 21 U.S.C. § 360c(a)(1). When a device has been approved, the manufacturer must maintain certain records and continue to report to the FDA about the device. *See* 21 U.S.C. § 360i.

The Second Circuit has not yet addressed the preemptive effect of the MDA upon tort actions such as the instant one.[4] Because Gore relies upon the express preemptive scope of 21 U.S.C. § 360k, this Court's task is primarily one of statutory construction. *See Cipollone,* ——— U.S. at ———, 112 S.Ct. at 2608. The preemption language in the MDA states:

> (a) General Rule
>
> Except as provided in subsection (b), no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
>
> (1) *which is different from, or in addition to,* any requirement applicable under this Act to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this Act.

21 U.S.C. § 360k(a) (emphasis added).

 The structure of § 360k(a) indicates that Congress intended to prohibit states, unless allowed under § 360k(b), from asserting their regulatory powers over medical devices. *See Bravman*, 842 F.Supp. at 754.[5] Courts should look to an agency's regulations for guidance concerning the agency's interpretation of its congressional mandate. *See Chevron, U.S.A., v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Bravman*, 842 F.Supp. at 755. The FDA states, in its regulations that:

> State or local requirements are preempted only when the Food and Drug Administration has established specific counterpart regulations *or there are other specific requirements applicable to a particular device* under the act, thereby making any existing divergent State or local requirements applicable to the device different from, or in addition to, the specific Food and Drug Administration requirements.

21 C.F.R. § 808.1(d) (emphasis added).

The parties do not dispute that there are no specific counterpart regulations relevant to the instant action, but they disagree about whether there are other specific requirements applicable to the Ligament. As in *Bravman*, the issue concerns whether the fact that a device has received Class III premarket approval classification under the MDA constitutes a specific requirement applicable to a particular device within the

---

4. Although the Second Circuit found that there was no federal preemption in *LaMontagne v. E.I. Du Pont De Nemours & Co., Inc.*, 41 F.3d 846 (2d Cir.1994), that case is of limited guidance in the instant matter. In that case, the FDA had given the defendant only temporary permission to market its device, and such permission was subject only to the general control provisions of the MDA. Consequently, the Second Circuit agreed with the district court's finding that the FDA had not established regulations specific to the medical device at issue in that case. *See LaMontagne*, 41 F.3d at 853–54.

5. The term "requirement," as used in § 360k(a), includes court decisions as well as state laws and

regulations. "[T]he Supreme Court has determined that state law requirements encompass common law tort actions." *Bravman*, 842 F.Supp. at 755; *see also Cipollone,* ——— U.S. at ———, 112 S.Ct. at 2620; 21 C.F.R. § 808.1(b); *Michael v. Shiley, Inc.*, 46 F.3d 1316, 1323 (3rd Cir.1995) ("We have already determined that the term 'requirements' as used in § 360k encompasses state common law claims"); *Gile v. Optical Radiation Corp.*, 22 F.3d 540, 542 (3d Cir. 1994); *Martello*, 42 F.3d at 1168 ("The FDA has interpreted § 360k(a) as preempting any state requirement, whether established by statute, ordinance, regulation, or *court decision*." (citations omitted) (emphasis added)).

meaning of § 360k and 21 C.F.R. 801.1(d). *See Bravman,* 842 F.Supp. at 757.

In *King v. Collagen Corp.,* 983 F.2d 1130 (1st Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993) and *Stamps v. Collagen Corp.,* 984 F.2d 1416 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993), the First and Fifth Circuits, respectively, held that the MDA preempts state tort actions revolving around a Class III device. The *King* court held that the FDA's evaluation and approval of a Class III device preempted the plaintiff's claims in strict liability, breach of express and implied warranty, negligence, product misbranding, misrepresentation and failure to warn, and fraud. *See King,* 983 F.2d at 1135–36. The *Stamps* court held that the MDA regulatory structure for a Class III device preempted claims for inadequate warning, defective design, and negligent failure to warn. *See Stamps,* 984 F.2d at 1422; *see also Reiter v. Zimmer, Inc.,* 830 F.Supp. 199 (S.D.N.Y. 1993) (following the holdings of *Stamps* and *King* ); *Shiley,* 46 F.3d at 1323.

*Bravman,* following the reasoning of *Stamps* and *King,* reads into the MDA a federal preemptive bar against state tort remedies. *See Bravman,* 842 F.Supp. at 760–61; *see also Slater v. Optical Radiation Corp.,* 961 F.2d 1330, 1333 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 327, 121 L.Ed.2d 246 (1992) ("If the FDA in a valid regulation under the Medical Devices Amendments requires X, and X relates to safety or effectiveness, a state cannot, whether through statute, regulation, or common law decision, require non-X or X + Y."); *Gile,* 22 F.3d at 541 (state law tort claims against a manufacturer of Class III medical devices entirely preempted); *Martello,* 42 F.3d at 1169 (the product at issue was approved by the FDA, pursuant to the premarket approval process, and consequently claims of strict liability, breach of express and implied warranties, and negligent design, inspection, instruction, warning, labeling and testing were all preempted by federal law); [6] *Talbott v. C.R. Bard, Inc.,* 865 F.Supp. 37, 40 (D.Mass 1994) ("the express preemption provided by 21 U.S.C. § 360k(a) manifests a decision by Congress to replace completely the private rights of action usually available under state law with civil and criminal enforcement by the federal government when thoroughly regulated devices ... are at issue.") [7]

In sum, numerous courts have found that the premarket approval process constitutes a "specific requirement" within the meaning of 21 C.F.R. § 808.1(d) so as to trigger preemption. Similarly, numerous cases have held that no counterpart regulation is required before preemption takes effect when the Class III device has been both subject to the premarket approval process and subsequently carefully regulated by the FDA.

 This Court finds that plaintiff's state law tort claims arising out of defendant's alleged negligent, careless and reckless manufacture, design, construction, labeling, packaging, distribution, and sale of the Ligament, generally, are preempted by the MDA. The FDA, pursuant to the terms of the FDCA and the MDA, regulates every aspect of the development, design, manufacture, packing, shipping, marketing, labeling and distribution of the Ligament, a Class III medical device. As part of this regulatory scheme, Congress prohibited states from imposing safety and effectiveness requirements on federally approved and regulated medical devices, which are "different from, or in addition to" those established under federal law or regulation. 21 U.S.C. § 360k(a). If Gore were to be held liable for failure to manufacture the Ligament properly or for improper labeling, for example, the court effectively would be imposing on Gore "requirement[s]" relating to safety and effectiveness of the device, which are "different from, or in addition to" those established under federal law and regulation. *See* 21 U.S.C. § 360k(a).

---

**6.** "The premarket approval process is a specific requirement for a device within the meaning of 21 U.S.C. § 360k(a) and 21 C.F.R. § 808.1(d)." *Martello,* 42 F.3d at 1169.

**7.** "The Court of Appeals for the First Circuit has found that the [premarket approval] process constitutes a 'specific requirement' within the meaning of 21 C.F.R. § 808.1(d) and, therefore, 21 U.S.C. § 360k(a) is operative with regard to Class III devices." *Talbott,* 865 F.Supp. at 44.

The rigorous detailed requirements of the process leading to the approval of a Class III device, as well as the post-approval regulation of the Class III device, give rise to preemption. Consequently, the MDA preempts plaintiff's first cause of action and her strict liability claim in the second cause of action to the extent that they state a claim which is not specific to the Ligament implanted in plaintiff.

### III. *Preemption of Specific Claims*

#### A. *Specific Device*

Plaintiff contends that even if preemption is applicable to the instant set of facts, as this Court has found, defendant's motion should still be denied because plaintiff's claim is not grounded solely upon a general claim of manufacture and design defect, but rather, is rooted in the negligent manufacture of the specific Ligament that was implanted in Richman. In other words, plaintiff claims that even if Gore's design and manufacturing process cannot be subject to additional requirements by state law, Gore could still be liable if the particular Ligament which Richman received did not satisfy either FDA requirements or Gore's own requirements. Plaintiff, therefore, urges this Court to deny defendant's motion and to permit discovery.[8]

Defendant argues that the overwhelming weight of the case law runs counter to plaintiff's position.[9] Defendant asserts that the courts have not allowed a plaintiff to circumvent the preemptive effect of the MDA by alleging a specific defect in, or a failure to comply with, either FDA regulations or the manufacturer's specifications with respect to the particular device used in the plaintiff.

Defendant's Reply Memorandum in Support of Defendant's Motion to Dismiss ("Defendant Reply") at 2. Similarly, defendant claims that courts have refused to accept a "fraud-on-the-FDA" exception to preemption for an alleged failure to supply the FDA with all necessary information to regulate a device. *Id.*

■ This Court finds that, to the extent that plaintiff claims that the particular Ligament used in her surgery was defective and failed to meet FDA requirements or Gore's own specifications, such claim is preempted. In the circumstances of the instant action, if plaintiff's claim that the particular device was defective is successful, it would establish new substantive requirements in areas already regulated by the FDA. *See Mendes v. Medtronic, Inc.,* 18 F.3d 13, 19 (1st Cir.1994) (where plaintiff's claim, if successful, would establish requirements in areas that the FDA already regulates, it is preempted). New substantive requirements would be established, in the instant case, because a court would pass judgment on the Ligament's manufacture, design or labeling, all of which were approved and regulated by the FDA. This Court must leave to the FDA an investigation of an alleged failure to comply with FDA standards, because otherwise it might create a requirement in addition to the mandates of the MDA.

In addition, this Court has been presented with no evidence that Congress intended to provide a private right of action to enforce a manufacturer's compliance with FDA requirements.[10] *See Kemp v. Pfizer, Inc.,* 835 F.Supp. 1015, 1021 (E.D.Mich.1993) ("Con-

---

8. Although plaintiff makes a credible argument that the specific Ligament implanted in plaintiff should be easy to identify and track, *see* Plaintiff Mem. at 4–5, some of her arguments lack persuasive force. For example, plaintiff argues that "defendant concedes that it voluntarily withdrew [the Ligament] from the market. Therefore, it is obvious that there was something wrong with the device ... It would strain credulity to believe that the [Ligament] was absolutely perfect in its design and manufacture and that each device was manufactured accordingly and yet Defendant unilaterally decided to withdraw this product from the market." *Id.* at 5. This type of argument is incapable of defeating a motion for summary judgment.

9. The only case cited by plaintiff is *Reiter,* 830 F.Supp. at 204, in which Judge McKenna, while finding the bulk of plaintiff's claims to be preempted, found that plaintiff's claim for negligent manufacture was not preempted where plaintiff alleged that defendant did not comply with its own FDA approved manufacturing process.

10. "(a) Except as provided in subsection (b), all such proceedings for the enforcement, or to restrain violations, of this Act shall be by and in the name of the United States." 21 U.S.C. § 337(a).

gress determined that the FDA, and not this court, has the task of insuring that Class III medical devices are safe and effective and are in compliance with the requirements of the MDA"); *see also Reeves v. AcroMed Corporation,* 44 F.3d 300, 307 (5th Cir.1995) ("the [MDA] establish an extensive enforcement scheme under which the FDA bears the primary responsibility for policing violations of its regulations.... Allowing a jury or court to second-guess the FDA's enforcement of its own regulations contravenes Congress' expressly stated intent in § 360k(a) to eliminate attempts by states to impose conflicting requirements on medical device manufacturers."); *Talbott,* 865 F.Supp. at 39 ("there is no private right of action to enforce the FDA's standards"); *Mendes,* 18 F.3d at 19 n. 4; *Gile,* 22 F.3d at 544.

"[W]here the FDA was authorized to render the expert decision, ... it, and not some jury or judge, is best suited to determine the factual issues and what their effect would have been on its original conclusions." *King,* 983 F.2d at 1140 (Aldrich, J., concurring). Thus, if a jury or a judge mistakenly determined that a defendant had not properly complied with FDA regulations, then a state requirement "different from, or in addition to" the dictates of the MDA would be imposed upon a Class III device. *See id.* at 1140 (Aldrich, J., concurring) (quoting 21 U.S.C. § 360k(a)); *see also Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 810–11, 106 S.Ct. 3229, 3233–34, 92 L.Ed.2d 650 (1986); *Talbott,* 865 F.Supp. at 39; [11] *Mendes,* 18 F.3d at 19 n. 4; and *Gile,* 22 F.3d at 544.

In sum, the Ligament, as a Class III device, is heavily regulated by the FDA, and even an action for a defect in a specific device is preempted. Consequently, the MDA preempts plaintiff's first cause of action and her strict liability claim in the second cause of action to the extent that they state a claim which is specific to the Ligament implanted in plaintiff.

**B.** *Implied Warranty under the UCC*

Plaintiff next argues that even if state tort law is preempted for FDA approved Class III medical devices, she still has a cause of action for breach of warranty. Plaintiff observes that the provisions of the Uniform Commercial Code ("UCC") specify that unless excluded or modified, a warranty that goods are merchantable is implied in a contract for their sale if the seller is a merchant with respect to the goods. *See* UCC § 2–314. Plaintiff further notes that an implied warranty of merchantability arises automatically in every sale of goods by one who is a merchant in those goods. *See Abraham v. Volkswagen of America, Inc.,* 795 F.2d 238, 249 (2d Cir.1986). Plaintiff then contends that the Ligament was not fit for the ordinary purpose for which it was intended and therefore Gore breached its implied warranty.

Plaintiff further argues that an action for personal injuries based upon breach of implied warranty is contractual, and she is entitled to sue for personal injuries based solely upon a breach of implied warranty. Plaintiff observes that 21 C.F.R. 808.1(d) states, in relevant part:

There are other state or local requirements that are not preempted by Section 521(a) because they are not requirements "applicable to a device" within the meaning of 521(a) of the act.

The following are examples of state or local requirements that are not regarded as preempted by Section 521 of the Act:

(1) Section 521(a) does not preempt State or local requirements of general applicability where the purpose of the requirement relates either to other products in addition to devices (e.g., requirements such as general electric codes and the Uniform Commercial Code (warranty of fitness) or to unfair trade practices where the requirements are not limited to devices

21 C.F.R. 808.1(d)

Plaintiff asserts that UCC § 2–314 is not directed solely at devices within the scope of

---

**11.** In *Talbott,* the court found that even though the manufacturer admitted to committing fraud on the FDA before and after approval of the device at issue in that case and to altering and adulterating devices shipped without FDA approval, all claims concerning those devices were preempted.

the MDA, and is therefore not preempted. Plaintiff concludes that even if state tort law is preempted, Gore is still liable for breach of its contractual obligation by virtue of its implied warranty of merchantability.

■ The UCC causes of action meet the first requirement of preemption under § 360k; they are state imposed. *See Shiley,* 46 F.3d at 1324–25. The requirements imposed by the UCC also potentially differ from or exceed the FDA's requirements. *Cf. id.* To decide Richman's implied warranty claim, the finder of fact would have to decide whether the Ligament was defective. *Cf. id.* Such a decision would depend upon the accepted standards for the design and manufacture of products in the State of New York. *Cf. id.* These standards may deviate from the FDA's determination. *See id.*

Accordingly, this Court finds that Richman's implied warranty claims are preempted by the MDA. If this were not the case, then operation of state implied warranty law could pose a requirement in addition to those imposed by the MDA. *See Shiley,* 46 F.3d at 1324–25; *see also King,* 983 F.2d at 1135–36. ("As an implied warranty is a requirement upon a product that arises exclusively from the operation of state contract law, this claim is preempted expressly by the MDA. Otherwise it would impose a requirement additional to those imposed by the MDA."); *Mendes,* 18 F.3d at 19 ("Plaintiff's implied warranty is also preempted by FDA's good manufacturing practices. . . . This means that under [state] law [the manufacturer] could be found liable even if it meticulously followed FDA's good manufacturing practices. For these reasons, plaintiff's breach of implied warranty claim is preempted."); *Talbott,* 865 F.Supp. at 51 (breach of implied warranty of fitness preempted even where manufacturer had pled guilty to conspiring to defraud FDA); *Kemp,* 835 F.Supp. at 1021.

## C. *Express Warranty*

Plaintiff contends that even if defendant complied with all the FDA standards and even if the particular Ligament implanted in her complied with those standards, she should still be allowed discovery to determine whether Gore entered into any express war-

ranties that contractually bound it to a higher standard of care. Defendant responds that plaintiff's claims of breach of express warranty are preempted because the FDA rigidly controls what statements a manufacturer can and cannot make regarding its Class III device. Defendant concludes that a claim of breach of express warranty must be preempted because a court deciding this claim could be imposing requirements other than or in addition to those permitted by the FDA.

■ The Court finds that plaintiff's claim stemming from a breach of an express warranty is not preempted.

Section 360k only pre-empts requirements which the state "establish[es]" or "continue[s] in force." The focus of § 360k is on preventing the States from imposing on medical device manufacturers normative policy choices which conflict with FDA requirements. . . . This focus is consistent with the limited purpose for which Congress displaced the states' coordinate regulatory role to permit efficient and effective FDA regulation of medical devices. The FDA itself has recognized the MDA's limited focus by interpreting § 360k to preempt only state requirements "having the force and effect of law," a term normally reserved for binding standards of conduct that operate irrespective of private agreement. . . . Express warranties arise from the representations of the parties which are made the basis of the bargain and do not result from the independent operation of state law. . . . Implied warranties, on the other hand, arise by operation of state law. . . . The parties to a contract, not the state, define the substantive obligations of the contract and hence any express warranties. While the state provides for the enforcement of the parties' bargain, it does not define each party's duties.

*Shiley,* 46 F.3d at 1325; *see also American Airlines v. Wolens,* —— U.S. ——, ——, 115 S.Ct. 817, 824, 130 L.Ed.2d 715 (1995) ("[w]e do not read the ADA's preemption clause, however, to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's

alleged breach of its own, self-imposed undertakings." (quotations and citations omitted)); *Cipollone*, —— U.S. at ——, 112 S.Ct. at 2622 ("[a] manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty. Accordingly, the 'requirements' imposed by a express warranty claim are not imposed under State law, but rather imposed by the warrantor.... In short, a common law remedy for a contractual commitment voluntarily undertaken should not be regarded as a requirement ... imposed under state law" (quotations omitted)).

Richman does not allege the breach of a specific express warranty. Rather, she urges the Court to allow her an opportunity to conduct discovery to determine whether there are any express warranties. Although some express warranties may be preempted, *see King*, 983 F.2d at 1135; *Kemp v. Pfizer, Inc.*, 851 F.Supp. 269 (E.D.Mich.1994), this Court cannot conclude that all possible express warranties are preempted.[12] Accordingly, plaintiff's claim for breach of express warranty is not preempted.

IV. *Failure to State a Claim*

■■■■ The Court, having found that all of plaintiff's claims, except her claim for breach of an express warranty, must be dismissed as preempted, need not reach defendant's alternative motion to dismiss for failure to state a claim, except as to the breach of express warranty claim. This Court grants summary judgment in favor of defendant on plaintiff's claim for breach of express

warranty. Plaintiff adduces no evidence indicating the creation of an express warranty. The complaint states only a conclusory legal claim with respect to the alleged breach of express warranty. Such a claim is not well-pleaded and cannot withstand a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Haber v. Brown*, 774 F.Supp. 877, 878–79 (S.D.N.Y. 1991). "Allegations this bare fail to afford Defendant adequate notice of the grounds underlying the claim against it." *Id.* at 879; *see also Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir.1977) (affirming dismissal of complaint containing "unsupported allegations, which fail to specify in detail the factual basis necessary to enable appellees intelligently to prepare their defense"). Inadequately pleaded factual allegations include those that are purely conclusory. *See Duncan v. AT & T Communications, Inc.*, 668 F.Supp. 232, 234 (S.D.N.Y.1987).

■■■■ Plaintiff's cause of action for breach of express warranty is no more than a bare-bones pleading. It provides no more than an alleged legal claim based on conclusions. In particular, plaintiff fails to state what was expressly warranted by defendant with regard to the Ligament. Accordingly, plaintiff's express warranty claim is not adequately pleaded and should be dismissed.[13]

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss all of plaintiff's causes of action, except her claim for breach of express

---

**12.** There seems to be a conflict between *King*, express warranty preempted, and *Shiley*, express warranty not preempted. This Court, however, need not decide between the rulings of the two courts because it merely finds that, in the circumstances of the instant case, not all express warranties are necessarily preempted. Plaintiff, in the instant action, has not specified the express warranty that defendant purportedly breached. Consequently, this Court must only decide whether the universe of all possible express warranties are necessarily preempted. Since they are not, this Court finds that plaintiff's claim for express warranty is not preempted. As will be discussed in the next section, however, plaintiff's claim for breach of an express warranty must be dismissed as an inadequate pleading.

**13.** Lastly, the Court notes that plaintiff argues that the lack of any discovery in the instant

action renders defendant's motion for summary judgment premature. Plaintiff seeks to delay summary judgment by claiming that she is entitled to discovery pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. This Court observes, however, that an affidavit filed pursuant to Rule 56(f) must explain how the facts sought to be discovered are "reasonably expected to create a genuine issue of material fact." *Hudson River Sloop Clearwater, Inc. v. Department of Navy*, 891 F.2d 414, 422 (2d Cir.1989). As none of the areas in which plaintiff seeks discovery are relevant to the issue of preemption, because there are no facts such discovery could reveal which would prevent the application of preemption to plaintiff's claims, this Court will not stay the instant motion to allow additional discovery.

warranty, as preempted, is granted. These causes of action are dismissed in their entirety. Defendant's motion to dismiss plaintiff's cause of action for breach of express warranty, for failure to state a claim upon which relief can be granted, is also granted, and this claim is dismissed without prejudice.

**SO ORDERED.**