John A. MASTRANGELO, Plaintiff,

v.

**HOWMEDICA, DIVISION OF PFIZER HOSPITAL PRODUCT GROUP, INC., Defendant.**

No. CV 93–4978.

United States District Court, E.D. New York.

Nov. 17, 1995.

---

Joachom Flanzig Frommer Beasley & Madigan by Sheldon Flanzig, Mineola, New York, for plaintiff.

Schoeman March & Updike by Beth L. Kaufman, New York City, for defendant.

## MEMORANDUM & ORDER

WEXLER, District Judge.

Plaintiff John A. Mastrangelo ("Mastrangelo" or "plaintiff") brought the above-referenced action in New York State Supreme Court, Nassau County alleging negligence, strict liability, and breach of warranty in connection with the design, manufacture, and sale by defendant Howmedica Inc. ("Howmedica" or "defendant") of an artificial knee joint. Defendant removed the action, pursuant to 28 U.S.C. § 1441, by virtue of a diversity of citizenship between the parties. Before the Court is defendant's motion, pursuant to Fed.R.Civ.P. 56(c), for an order granting summary judgment and dismissing the complaint on the ground that Mastrangelo's claims are preempted by the Medical Device Amendments of 1976 (the "MDA"), 21 U.S.C. § 360c *et seq.*, of the Federal Food, Drug and Cosmetics Act, 21 U.S.C. § 301 *et seq.*

## I. BACKGROUND & FACTS

Mastrangelo was diagnosed as having bilateral gouty arthritis of both knees. On April 24, 1989, at age seventy-one, Mastrangelo underwent bilateral knee-joint replacements. He alleges that Howmedica's devices, known as the Porous Coated Anatomic Knee ("PCA knee"), were implanted at that time. Verified Complaint (the "Complaint"), ¶ 9.

In 1991, Mastrangelo developed progressive swelling and pain in his left knee. *Id.* at ¶ 10. On November 18, 1991, he underwent a revision operation on his left knee. During the operation, it was found that the patellar component of the PCA knee had become fractured, and a new patellar component was inserted. *Id.;* Notice of Mot. for Summ.J., Exh.D. (November 30, 1991 hospital discharge summary for Mastrangelo).

The Complaint, filed October 12, 1993, alleges that Howmedica "was negligent in the design, manufacture, assembly, sale, and delivery" of the PCA knee, and that Howmedica's negligence caused injury to Mastrangelo. Complaint, ¶ 12–13. Further, plaintiff alleges that the patellar component "was negligently designed and manufactured so that approximately 60% of the nonmetallic button had separated from the metal backing and broke it into numerous small pieces." The "ultimate cause of the patellar component," according to the Complaint, "was high stresses at the edge of the nonmetallic button" *Id.* ¶ 12. Plaintiff's experts' report, advanced by defendant in support of its motion for sum-

mary judgment, concludes that defect was "inherent to [the patellar component] design." Notice of Mot. for Summ. J., Exh. E, at 3.

Mastrangelo's first cause of action seeks damages based on common law negligence; the second cause of action seeks strict liability damages. The third cause of action alleges that, because the patellar component "was not fit for its intended use, and was not merchantable," Howmedica breached "implied and express warranties of fitness and safety." Complaint, ¶ 21.

As a medical device, the PCA knee falls within the scope of the MDA and must therefore be approved and regulated by the Food and Drug Administration ("FDA"). The PCA knee is categorized under the MDA as a Class III medical device, and, as such, is subject to the most extensive FDA scrutiny before and after approval. Aff't of Robert Smith ("Smith Aff't"), ¶¶ 3, 7.

The pre-market approval process is designed to provide a "reasonable assurance of ... safety and effectiveness" for medical devices that are potentially dangerous. 21 U.S.C. § 360c(a)(1)(C). Post-approval regulation is designed to keep the FDA appraised of all safety information about the device as it becomes available. *Id.* §§ 360e(e) & 360i(a).

Howmedica filed a pre-market approval application for the PCA knee with the FDA in October 1984. Smith Aff't, at ¶ 5. After many revisions, the application was approved by the FDA in September 1988. *Id.* ¶ 7.

## II. *DISCUSSION*

A party seeking summary judgment must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of "informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct.

2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). The initial burden is to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554.

The nonmoving party may defeat the summary judgment motion by producing sufficient evidence to establish a genuine issue of material fact for trial. *See id.* at 322, 106 S.Ct. at 2552. The test for existence of a genuine dispute is whether a reasonable juror could find for the nonmoving party; that is, whether the nonmovant's case, if proved at trial, would be sufficient to survive a motion for judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

In ruling on a motion for summary judgment, a court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs.,* 834 F.2d 54, 57 (2d Cir.1987). The nonmoving party, however, "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Indeed, the nonmoving party's opposition may not rest on mere allegations or denials of the moving party's pleading, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (citations and quotations omitted).

Howmedica argues that no genuine issue of material fact exists in the instant case because each of Mastrangelo's state-law claims are preempted by the MDA. Even if the Court determines that no preemption exists as to one or all of the claims, Howmedica insists that summary judgment is still appropriate because the record does not establish a genuine issue of material fact.

Article VI of the United States Constitution dictates that federal law "shall be the supreme Law of the Land; and that the judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State notwithstanding." U.S. Const. art. VI, cl. 2. Any state law which conflicts with federal law may be preempted. *Malone v. White Motor Corp.*, 435 U.S. 497, 504–05, 98 S.Ct. 1185, 1190–91, 55 L.Ed.2d 443 (1978). State law will not be preempted, however, unless it "was the clear and manifest purpose of Congress" to do so. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Congress may express its intent to preempt state law implicitly by passing an extensive statutory scheme that fully occupies the relevant field of regulation, *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982), or it may express its intent to preempt in the language of a statute, *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977).

Congress addressed preemption in the language of the MDA. The statute reads:

> [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
>
> (1) *which is different from, or in addition to, any requirement applicable under this Act* to the device, and
>
> (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this Act.

21 U.S.C. § 360k(a) (emphasis added). In interpreting the scope of a congressional preemption mandate, courts should examine relevant administrative regulations. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). In this regard, the FDA has stated:

> State or local requirements are preempted only when the [FDA] has established specific counterpart regulations or there are *other specific requirements* applicable to a particular device under the act, thereby making any existing divergent State or local requirements applicable to the device different from, or in addition to, the specific [FDA] requirements.

21 C.F.R. § 808.1(d) (emphasis added). In addition, the FDA has expressed that a "State ... requirement," as identified in § 360k(a), may emanate from any requirement established by a state including statutes, regulations, court decisions, or ordinances. *See id.* § 808.1(b); *see also King v. Collagen Corp.*, 983 F.2d 1130, 1134 (1st Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993).

Although the United States Court of Appeals for the Second Circuit has not addressed the preemptive effect of the MDA upon tort actions, the overwhelming consensus among the Courts of Appeal is that § 360k(a) demonstrates a broad field of preemption with few narrow limitations. *See, e.g., Martello v. Ciba Vision Corp.*, 42 F.3d 1167 (8th Cir.1994); *Gile v. Optical Radiation Corp.*, 22 F.3d 540 (3d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 429, 130 L.Ed.2d 342 (1994); *Mendes v. Medtronic, Inc.*, 18 F.3d 13 (1st Cir.1994); *Stamps v. Collagen Corp.*, 984 F.2d 1416 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993); *Slater v. Optical Radiation Corp.*, 961 F.2d 1330, 1334 (7th Cir.) (noting, however, that the MDA does not preempt such claims as negligent implantation or removal of devices, or claims arising out of contaminated devices), *cert. denied,* —— U.S. ——, 113 S.Ct. 327, 121 L.Ed.2d 246 (1992). *See also Richman v. W.L. Gore & Assocs., Inc.*, 881 F.Supp. 895 (S.D.N.Y.1995); *Bravman v. Baxter Healthcare Corp.*, 842 F.Supp. 747 (S.D.N.Y.1994); *Reiter v. Zimmer, Inc.*, 830 F.Supp. 199 (S.D.N.Y.1993).

These courts treat the FDA's pre- and post-market regulation of Class III medical devices as "specific requirements" within the meaning of 21 C.F.R. § 808.1(d). As such, state law—whether in the form of regulations or court decisions—may not impose on a Class III device a "requirement ... which is different from, or in addition to, any requirement" imposed by the FDA. The Court's

task in the instant case, therefore, is to determine whether granting the relief requested by Mastrangelo in each of his claims would impose a forbidden requirement.

 Mastrangelo's negligence and strict liability claims assert that the patellar component of the PCA knee "was negligently designed and manufactured" by Howmedica. Evidence in the record indicates that the gravamen of these claims is a defect in the design of the PCA knee. Notice of Mot. for Summ. J., Exh. E, at 3. Mastrangelo has not presented any evidence supporting a manufacturing defect claim. The Complaint does not allege negligence with respect to the implantation of the device, or failure to comply with FDA regulations. Indeed, Mastrangelo has not advanced evidence supporting anything other than a design defect claim.

Whereas a manufacturing defect claim charges negligence in the manufacture of the particular device in question, a design defect claim alleges that the manufacturer could have designed the device to be more safe. *See Robinson v. Reed–Prentice Div. of Package Mach. Co.,* 49 N.Y.2d 471, 426 N.Y.S.2d 717, 720, 403 N.E.2d 440, 442 (1980). If successful, Mastrangelo's design defect claim would require Howmedica to redesign the PCA knee or be subject to liability. Such a result would impose a requirement "different from, or in addition to" the pre- and post-market FDA requirements. It is precisely this scenario that Congress sought to avoid by enacting § 360k(a). Congress intended for the FDA, not the courts, to establish safety standards and determine whether a medical device's design meets those standards. Mastrangelo's negligence and strict liability claims, therefore, are preempted by the MDA and must be dismissed.

 Mastrangelo's third cause of action alleges that Howmedica breached "implied and express warranties of fitness and safety." Mastrangelo argues that Howmedica breached the implied warranty of merchantability, as defined by Article 2, Section 2–314 of the

New York Uniform Commercial Code ("NYUCC"), by selling the PCA knee even though it was not fit for the ordinary purpose for which it is used.[1] Mastrangelo insists that, even if state tort actions are preempted by the MDA, he is still entitled to pursue a breach of contract claim under the NYUCC. Indeed, 21 C.F.R. § 808.1(d)(1) provides that "requirements such as the Uniform Commercial Code (warranty of fitness)" are not preempted by the MDA.

Nonetheless, courts have uniformly held that implied warranty of merchantability claims are preempted. *See, e.g., Michael v. Shiley, Inc.,* 46 F.3d 1316, 1324–25 (3d Cir. 1995); *Mendes,* 18 F.3d at 19; *King,* 983 F.2d at 1135–36 ("As an implied warranty is a requirement upon a product that arises exclusively from the operation of state contract law, this claim is preempted expressly by the MDA. Otherwise it would impose a requirement additional to those imposed by the MDA."). A claim under Section 2–314 of the NYUCC involves a determination of whether a merchant's goods are in some way defective. To make that determination in the instant case, the finder of fact would have to determine whether the PCA knee conformed to established safety standards for design and manufacture of products in New York. *See Richman,* 881 F.Supp. at 904. These standards may deviate from those established by the FDA. Mastrangelo's implied warranty claim, therefore, is preempted because, if successful, it would impose a requirement in addition to those imposed by the MDA.

A claim for breach of express warranty may survive preemption. Section 360k(a) only preempts requirements which the state "establish[es]" or "continu[es]." An express warranty is created by a seller's affirmative act that becomes a basis of the bargain. *See* N.Y.U.C.C. § 2–314. Unlike implied warranties, express warranties do not result from the operation of state law—they arise from the parties' representations. Although cer-

---

1. Mastrangelo purports to state a claim under Section 2–315 for breach of the implied warranty for fitness for a particular purpose. At a minimum, a claim of this nature must allege that the buyer purchased the accused goods for a "partic-

ular purpose" as opposed to their "ordinary purpose." *See* N.Y.U.C.C. § 2–315 cmt. 2 (McKinney 1993). The Complaint does not identify any purpose for which Mastrangelo sought the PCA knee other than its ordinary purpose.

tain express warranties may be preempted by the MDA, it cannot be said that all are preempted. *See Shiley,* 46 F.3d at 1325; *see also American Airlines v. Wolens,* — U.S. —, —, 115 S.Ct. 817, 824, 130 L.Ed.2d 715 (1995) (holding that a claim accusing an airline of breaching "its own, self-imposed undertakings" was not preempted by the Americans With Disabilities Act); *Cipollone v. Liggett Group,* 505 U.S. 504, 525, 112 S.Ct. 2608, 2622, 120 L.Ed.2d 407 (1992) ("[A] contractual commitment voluntarily undertaken should not be regarded as a requirement ... imposed under state law" (citations and quotations omitted).); *Richman,* 881 F.Supp. at 904–05. As a general matter, therefore, Mastrangelo's express warranty claim may survive preemption.

■ The Court need not make a preemption determination in the instant case, however, because Mastrangelo's express warranty claim is not supported by the type evidence necessary to survive a summary judgment motion. The opposition to a summary judgment motion may not rest on mere allegations or denials of the moving party's pleading; it "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). To avoid summary judgment on an express warranty claim, the nonmoving party must present the parol evidence that warranties were made and intended. *Mallad Constr. Corp. v. County Fed. Sav. & Loan Assoc.,* 32 N.Y.2d 285, 344 N.Y.S.2d 925, 931, 298 N.E.2d 96, 100 (1973). Express warranty claims should be dismissed where they do not contain specific factual reference to any oral or written warranties. *Bichler v. Willing,* 58 A.D.2d 331, 397 N.Y.S.2d 57, 58 (1st Dep't 1977). Mastrangelo has not come forth with any evidence in support of an express warranty claim. Indeed, he has failed to even identify the nature or content of the supposed express warranty. He merely alleges that an express warranty was made by Howmedica. This is not sufficient. Accordingly, even though plaintiff's express warranty claim could potentially survive preemption, it does not raise a genuine issue of material fact, and must be dismissed.

### III. CONCLUSION

For the above reasons, Howmedica's motion for summary judgment is granted and the Complaint is dismissed.

SO ORDERED.